**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 1, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOSE MANUEL DIAZ,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 11-9580
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **EBEL**, Circuit Judges.

Jose Manuel Diaz, a native and citizen of Guatemala, petitions for review of

the decision of the Board of Immigration Appeals (BIA) reversing the decision by the

immigration judge (IJ) that granted withholding of removal under the United Nations

Convention Against Torture (CAT). He argues that (1) the BIA erred in concluding

that his drug offense was a "particularly serious crime," causing him to be ineligible

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

for withholding of removal under the CAT; and (2) even if he was ineligible for withholding of removal, he was eligible for deferral of removal under the CAT because he showed that it is more likely than not that he will be tortured with the acquiescence of the Guatemalan government if he is returned to that country. We have jurisdiction under 8 U.S.C. § 1252(a) to review the BIA's decision, and we deny the petition for review.

## BACKGROUND

On July 20, 1995, Mr. Diaz, who was seven years old, legally entered the United States with his family on a visitor visa. He remained in the United States much longer than the six months permitted by the visa. On December 9, 2008, the Department of Homeland Security (DHS) issued a Notice to Appear, asserting his removability under 8 U.S.C. § 1227(a)(1)(B).

After the Notice was issued, Mr. Diaz was convicted of delivery of a controlled substance in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii). His 18-to-36-month sentence was suspended, and he was placed on probation for three years.

At a hearing before the IJ, Mr. Diaz conceded removability, but requested restriction on removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3), and the CAT.[1] He testified that a buyer, a confidential informant to

---

[1]     "Restriction on removal was referred to as 'withholding of removal' before amendments to the INA made by the Illegal Immigration Reform and Immigrant

(continued)

- 2 -

whom Mr. Diaz had previously sold drugs and who had used drugs with him, called him and asked him if he could find ecstasy pills for the buyer to purchase. Mr. Diaz introduced the buyer to a seller. Those two made independent arrangements for the deal. Mr. Diaz was present when 16 ecstasy pills and $320 were exchanged, and he handed the package of pills from the seller to the buyer. According to Mr. Diaz, he received no money.

Mr. Diaz, his parents, and an expert on gangs in Central America testified about Mr. Diaz's fear of torture upon returning to Guatemala. Based on what he had read and heard in detention, Mr. Diaz expressed a fear that upon his return gangs would target him because they would assume he had money. Although he would live with one of his uncles in Guatemala, he doubted that he would be entirely safe with any of them.

Mr. Diaz's mother testified that she believed that he would be harmed in Guatemala because he has been raised in the United States. But she conceded that she could not single out who would harm him; rather, she believed everyone in Guatemala was subject to harm and danger. Mr. Diaz's father testified that he was 100% sure his son would be harmed because criminal organizations recruit deportees, use them, and then kill them.

Responsibility Act of 1996 (IIRIRA) . . . . Although both parties and the [agency] refer to withholding of removal, for the sake of accuracy, and because this claim was filed after IIRIRA's effective date, we will use the term 'restriction on removal' . . . ." *Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004).

The expert, Dr. Thomas Boerman, Ph.D., stated that Guatemalan government officials are involved with the criminal element. He believed that Mr. Diaz would be recognized as someone who had been in the United States for a long time, placing him at risk for brutality or torture in a country where the government would either be incapable or unwilling to protect him, resulting in his being a target for corrupt government officials. He said that Mr. Diaz would be a particular target for drug-trafficking organizations because of his fluency in English and his familiarity with American culture. According to the expert, if Mr. Diaz refused to cooperate with these organizations, he would risk persecution and torture. Without having met or spoken to Mr. Diaz, the expert testified that Mr. Diaz faced an 80-90% likelihood of harm if he returns to Guatemala.

Additionally, Mr. Diaz presented to the IJ several publications, including the United States Department of State 2010 Human Rights Report: Guatemala, discussing the many problems in Guatemala. These publications noted widespread violence; drug trafficking and extortion; government corruption; police involvement in crime, including unlawful killing; and vulnerability of deportees to violence and harassment from gangs, police, and society.

The IJ denied restriction on removal under § 1231(b)(3), because Mr. Diaz failed to show that he is a member of a particular social group. But the IJ determined that Mr. Diaz was not precluded from withholding of removal under the CAT because he has not been convicted of a particularly serious crime. Although recognizing that

drug-trafficking crimes are presumed to be particularly serious, the IJ found that Mr. Diaz rebutted the presumption. To begin with, it found that Mr. Diaz's offense satisfied all six conditions set forth in the Attorney General's opinion in *In re Y-L-*, 23 I. & N. Dec. 270, 276-77 (2002): (1) a small quantity of drugs was involved--16 pills; (2) a modest amount of money--$320--was paid for the drugs; (3) Mr. Diaz's involvement in the drug transaction was peripheral; (4) there was no violence or threat of violence; (5) there was no organized crime or terrorist involvement; and (6) the transaction had no harmful effects on a juvenile.

The IJ further decided other, more unusual circumstances justified the more lenient treatment of Mr. Diaz's offense: (1) the criminal case against the seller was dismissed; (2) Mr. Diaz had moved to withdraw his plea on the ground of ineffective assistance of counsel; and (3) he witnessed domestic violence as a child, which correlates to drug use and criminal problems later in life. Finally, the IJ found (1) "that it is more likely than not that [Mr. Diaz] will be tortured upon removal to Guatemala due to his long absence from Guatemala, his familiarity with American culture and his English language skills as well as his Americanized Spanish," Admin. R. at 152, and (2) that the torture would occur with the acquiescence of the Guatemalan government. The IJ therefore granted Mr. Diaz withholding of removal under the CAT. The DHS appealed.

The BIA sustained the appeal, vacated the IJ's decision, and ordered Mr. Diaz removed to Guatemala. Because Mr. Diaz did not appeal the denial of restriction on

removal, the BIA addressed only the CAT, first considering whether Mr. Diaz had been convicted of a particularly serious crime. The BIA ruled that the IJ had misapplied two *Y-L-* factors. The BIA determined that the amount of money involved, $320, was not de minimis or inconsequential. And it decided that Mr. Diaz's involvement in the crime was not merely peripheral because the drug transaction would not have taken place without his introducing the buyer and seller and he was present when the transaction occurred. Mr. Diaz's failure to demonstrate all the *Y-L-* criteria undermined his claim that his crime was not particularly serious, so he was ineligible for withholding of removal under the CAT.

The BIA then considered de novo whether Mr. Diaz would be eligible for deferral of removal under the CAT, and concluded that he would not be. The BIA found that Mr. Diaz did not show that he would be at personal risk of torture. It said that the expert's predictions of torture, based on generalized country conditions in Guatemala, were too speculative to satisfy Mr. Diaz's burden of proof. Although recognizing that crime and violence in Guatemala are rampant and that police and government official corruption is extensive, the BIA explained that Mr. Diaz had related no incident in which a criminal actor or corrupt police officer or government official had sought him out for harm or indicated acquiescence in his future torture.

## ANALYSIS

### Particularly Serious Crime

Mr. Diaz argues that his drug conviction was not a particularly serious crime because he meets all six requirements set forth in *Y-L-*. He complains that the BIA discussed only two requirements and failed to explain why a departure from *Y-L-* was not warranted. He also faults the BIA for failing to explain why $320 was not a de minimis amount of money or to cite any case law supporting its determination that his involvement was not peripheral. In short, Mr. Diaz contends that the BIA did not make a careful or individualized determination or provide reasons for its decision.

We review for an abuse of discretion the BIA's determination that Mr. Diaz was convicted of a particularly serious crime. *See Arbid v. Holder*, 674 F.3d 1138, 1141 (9th Cir. 2012).[2] "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Kechkar v.*

---

[2] In *Brue v. Gonzales*, 464 F.3d 1227, 1232 (10th Cir. 2006), we stated that "the agency's determination that petitioner committed a particularly serious crime . . . does not present . . . a completely unreviewable discretionary decision. [W]e cannot reweigh evidence to determine if the crime was indeed particularly serious, [but] we can determine . . . whether the BIA applied the correct legal standard in making its determination." We apparently thought that our review was so limited because of the limitation on judicial review of discretionary decisions by the Attorney General set forth in 8 U.S.C. § 1252(a)(2)(B)(ii). But in *Kucana v. Holder*, 558 U.S. 233, 130 S. Ct. 827, 833 (2010), the Supreme Court held that the jurisdictional limitation applies only when a statute expressly sets out the Attorney General's discretionary authority. There is no such statutory language applicable here, so our review is not as limited as stated in *Brue*. The Attorney General's brief agrees.

- 7 -

*Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted). Applying this standard, we conclude that the BIA did not abuse its discretion.

Under 8 U.S.C. § 1231(b)(3)(B)(ii), an alien is not eligible for withholding of removal if "the Attorney General decides" that "the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States." The statute does not define *particularly serious crime*. Although an aggravated felony for which at least a five-year term of imprisonment is imposed is deemed to be a "particularly serious crime," the Attorney General can "determin[e] that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." *Id*. § 1231(b)(3)(B). The statute does not guide the Attorney General in making this determination.

But *Y-L-* does. The Attorney General declared: "[A]ggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes' . . . . Only under the most extenuating circumstances that are both extraordinary and compelling would departure from this interpretation be warranted or permissible." *Y-L-*, 23 I. & N. Dec. at 274; *see Miguel-Miguel v. Gonzales*, 500 F.3d 941, 947 (9th Cir. 2007) (recognizing that *Y-L-* creates an "extraordinarily strong presumption" that drug-trafficking crimes are particularly serious crimes). At a minimum, those extraordinary and compelling circumstances include:

> (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction;

- 8 -

(3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; *and* (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

*Y-L-*, 23 I. & N. Dec. at 276-77 (emphasis added). The Attorney General apparently equates "very small" and "very modest" with "*de minimis* or inconsequential." *Id*. at 276-77. If the alien shows the six circumstances, it is appropriate to consider whether "other, more unusual circumstances" may justify departing from the presumption that drug trafficking crimes are particularly serious. *Id*. at 277. A short sentence is irrelevant to the particularly-serious-crime determination. *See id*. at 277-78.

Mr. Diaz was required to show that each of the six circumstances was present. *See Y-L-*, 23 I. & N. Dec. at 276-77. But he did not show as a matter of law that $320 is an inconsequential amount of money or that his involvement was merely peripheral. It is not enough just to assert that $320 is a modest amount. And the BIA could reasonably determine that Mr. Diaz's involvement was not peripheral because he introduced the buyer and seller and was present when the transaction took place, even passing the drugs from the seller to the buyer.

Once it found two required circumstances absent, the BIA did not err in failing to analyze all six *Y-L-* requirements. It engaged in an individualized determination and provided reasons for relying on the presumption that Mr. Diaz's drug-trafficking

crime was a particularly serious crime.  Although we may have decided otherwise, we must uphold the BIA's decision.

## Deferral of Removal Under CAT

Despite being ineligible for withholding of removal under the CAT, Mr. Diaz may be eligible under the Convention for deferral of removal.  *See* 8 C.F.R. § 1208.17(a); *see also id*. § 1208.16(c)(4) (stating that if denial of withholding of removal is mandatory, alien entitled to protection under CAT will receive deferred removal).

Mr. Diaz argues that the BIA erred in deciding that he was not eligible for deferral of removal, because he fears for his life if he is removed to Guatemala.  His fear is based on his status (if removed to Guatemala) as a deportee who speaks English and is Americanized; the likelihood that gangs, corrupt police officers, and drug traffickers will attempt to force him to engage in criminal activity, and will torture him if he refuses; and the risk that the government itself would instigate his torture or turn a blind eye to any torture.  He contends that the BIA did not consider all these factors and did not provide an explanation for its decision.  He further asserts that the BIA improperly declined to give weight to his expert's opinion, believing it was based solely on general country conditions, and improperly rejected his country-conditions evidence on the ground he did not show how he would be singled out for torture.

We review the BIA's factual findings under a substantial-evidence standard. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We defer to those findings unless "'any reasonable adjudicator'" would be compelled to find to the contrary. *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)).

"Article 3 of the Convention Against Torture prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Id.* (brackets and internal quotation marks omitted). "Acquiescence of a public official requires that the public official, prior to the activity constituting the torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). Actual knowledge and willful acceptance is not required for acquiescence; willful blindness is sufficient. *See Cruz-Funez*, 406 F.3d at 1192. Mr. Diaz bears the burden of showing that it is "more likely than not" that he will be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity" if he is removed to Guatemala. *Pieschacon-Villegas v. Att'y Gen. of U.S.*, 671 F.3d 303, 310-11 (3d Cir. 2011) (internal quotation marks omitted).

Contrary to Mr. Diaz's assertion, the BIA adequately articulated its reasons for reversing the IJ's determination that Mr. Diaz had shown that it was more likely than not that he would be tortured. The BIA explained that the expert was an authority on

- 11 -

gangs in Central America but his testimony concerning the likelihood of Mr. Diaz's being tortured was beyond the scope of his expertise. Further, the BIA determined that general evidence of official corruption was not sufficient to show that Mr. Diaz would be tortured with the acquiescence of the government. No record evidence compels a conclusion that he personally faces torture upon his return to Guatemala. *See Valdiviezo-Galdamez v. Att'y Gen. of U.S.*, 663 F.3d 582, 592 (3d Cir. 2011) ("Specific grounds must exist that indicate that the individual would be personally at risk." (internal quotation marks omitted)). The BIA could properly decide that Mr. Diaz had supported his assertions with mere speculation and general information about conditions in Guatemala. *See id.* ("[T]he existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture upon his . . . return to that country." (internal quotation marks omitted)). We must affirm the decision by the BIA.

## LEAVE TO PROCEED IN FORMA PAUPERIS

Mr. Diaz seeks leave to proceed on appeal in forma pauperis. In order to obtain leave, he must file an affidavit (1) showing in detail his inability to pay the filing fee, (2) claiming his entitlement to redress, and (3) stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(b) (referring to the requirements of Rule 24(a)(1)). Mr. Diaz, who is represented by counsel, failed to file the required

- 12 -

affidavit.  Moreover, his recitation of indigence in his motion is conclusory, not detailed.  Accordingly, we DENY leave to proceed on appeal in forma pauperis.

## CONCLUSION

Mr. Diaz's petition for review and motion for leave to proceed on appeal in forma pauperis are DENIED.

Entered for the Court


Harris L Hartz
Circuit Judge