# United States Court of Appeals
## For the First Circuit

No. 18-1923

JUAN ALECIO SAMAYOA CABRERA,

Petitioner,

v.

WILLIAM P. BARR,[*] Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Selya, and Barron,
<u>Circuit Judges</u>.

<u>Randy Olen</u> for petitioner.
<u>Sarah K. Pergolizzi</u>, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, with whom <u>Joseph H. Hunt</u>, Assistant Attorney General, Civil Division, and <u>Kohsei Ugumori</u>, Senior Litigation Counsel, were on brief, for respondent.

October 1, 2019

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General William P. Barr has been substituted for former Attorney General Jefferson B. Sessions, III as the respondent.

**BARRON**, **Circuit Judge**.  Juan Alecio Samayoa Cabrera ("Samayoa"), a citizen of Guatemala who arrived in the United States without admission or parole, petitions for review from a ruling by the Board of Immigration Appeals ("BIA") rejecting his request for deferral of removal pursuant to the Convention Against Torture ("CAT").  We deny the petition in part and dismiss it in part.

**I.**

In 1992, Samayoa entered the United States from Guatemala without inspection.  Soon thereafter, he applied for asylum.  His application was rejected by the immigration judge ("IJ"), who instead granted him voluntary departure contingent on him leaving the country within 60 days and ordered him removed if he failed to do so.  The BIA then affirmed that ruling, and we denied his petition for review from the BIA's decision.  See Samayoa Cabrera v. Ashcroft, 367 F.3d 10 (1st Cir. 2004).  Samayoa's removal proceedings were conditionally terminated in 2011 after he obtained a temporary U visa, which permitted him to remain in the United States.[1]  By 2017, however, his U visa had expired and the government again initiated removal proceedings against him.

---

[1] A U visa is available to certain victims of crimes who assist government officials in investigating or prosecuting those crimes.  See 8 U.S.C. § 1101(a)(15)(U).

In those proceedings, Samayoa conceded that he had entered this country without admission or parole, see 8 U.S.C. § 1182(a)(6)(A)(i), but sought various forms of relief from removal. By the time of his removal hearing before the IJ, Samayoa had narrowed those claims for relief to just one: deferral of removal under the CAT. The IJ rejected that request for relief, however, and the BIA then affirmed the IJ's ruling. Samayoa now petitions for review from the BIA's decision.

## II.

To make out a successful CAT claim, Samayoa must show that it is "more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). For these purposes, "torture" is defined as:

> (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

Settenda v. Ashcroft, 377 F.3d 89, 94 (1st Cir. 2004) (quoting Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004)); see also 8 C.F.R. § 1208.18(a).

Samayoa based his CAT claim before the IJ on the contention that he is alleged (falsely, in his view) to have committed a number of war crimes while he served as a paramilitary leader during the Guatemalan Civil War in the 1980s. Samayoa

- 3 -

contended that, in consequence of those allegations and his resulting notoriety in Guatemala, if he were removed there, he would be either targeted and tortured by guerilla groups or imprisoned and then tortured while in prison. In his petition for review, however, Samayoa focuses on the imprisonment-based ground for securing deferral of removal under the CAT. We thus focus solely on that ground, too.[2]

**A.**

Samayoa first challenges the standard of review that the BIA used to review the IJ's ruling. In doing so, he focuses in part on the following portion of the BIA's ruling:

> The Immigration Judge found that it was not more likely than not that the respondent would experience mistreatment rising to the level of torture . . . if he were to return to Guatemala . . . . An Immigration Judge's determination on the probability of future events, including events constituting torture, is a finding of fact which is subject to clear error review by the Board. We conclude that the respondent has not established that the Immigration Judge's determination regarding what is likely to happen to the respondent upon his return to Guatemala is clearly erroneous. Notably, much of the respondent's fear concerning future torture appears to be generalized and unsupported, and relies on a series of suppositions that are simply too speculative

---

[2] To the extent that the petitioner attempts to argue that he would face torture outside of prison upon removal to Guatemala, his argument is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

to meet the burden of proof for Convention
Against Torture protection.

(Internal citations omitted).

Samayoa argues that this passage reveals that the BIA wrongly applied the highly deferential clear error standard of review to the question of whether it would constitute torture to subject him to the kind of treatment that he asserted that he would be subject to in prison in Guatemala -- if, in fact, he were subject to it. Samayoa contends that such a question -- because it concerns what constitutes torture -- is properly viewed as a legal one and thus one that is subject to de novo review.

Samayoa is right that, for the purposes of BIA review, the IJ's "predictive findings of what may or may not occur in the future are findings of fact . . . subject to a clearly erroneous standard of review," Matter of Z-Z-O-, 26 I. & N. Dec. 586, 590 (BIA 2015), while the question of whether those predicted events, insofar as they occur, "meet the legal requirements for relief from removal" is reviewed de novo, id. at 591; see also Liu Jin Lin v. Holder, 723 F.3d 300, 307 (1st Cir. 2013). But, we do not see how the portion of the BIA's opinion quoted above reveals that the BIA failed to adhere to this distinction in reviewing the IJ's decision.

In so concluding, we note that Samayoa conceded to the BIA that poor prison conditions in Guatemala, on their own, were

insufficient to make Samayoa eligible for CAT protection. But, absent having made such a contention to the BIA, Samayoa would have had to demonstrate to the BIA that the IJ had erred in rejecting his contention that he was particularly likely to be tortured because he would be targeted for harsher treatment than other prisoners in consequence of who he was. And, in fact, Samayoa attempted to show to the BIA that -- notwithstanding the IJ's contrary determination -- he had established the basis for making just that predictive finding.

Thus, when we consider the portion of the BIA's opinion quoted above against this background, we conclude that the BIA's opinion is best read to reveal in this passage that the BIA was reviewing only the IJ's finding that Samayoa had not demonstrated that he would experience distinctive treatment, as he had contended. That finding, however, is properly reviewed only for clear error precisely because it concerns only the factual accuracy of Samayoa's predictive claim about the likelihood that he would be treated differently from others. Accordingly, there is no indication that the BIA was wrongly purporting to review for clear error a legal determination as to whether, in the event that Samayoa's predictive claim were accurate, the treatment that he would then suffer would be severe enough to qualify as torture.

Samayoa separately challenges the BIA's affirmance of the IJ's determination that, even assuming Samayoa's fears of

mistreatment were to materialize, there would be insufficient governmental involvement for the mistreatment to qualify as torture under the CAT. Samayoa contends that, here too, the BIA incorrectly reviewed the IJ's opinion for clear error where a de novo analysis was required. But, while it is true that the BIA's opinion does not explicitly spell out the standard of review it applied on this point, we see no evidence that it reviewed the IJ's conclusion for clear error, particularly where it found the IJ's holding to be "correct[]" and cited legal authority for its conclusion.

Accordingly, we reject Samayoa's standard-of-review-based challenge. See Enwonwu v. Gonzáles, 232 F. App'x 11, 15 (1st Cir. 2007) (per curiam) (recognizing "the presumption of regularity that attaches to the BIA's official acts").

**B.**

Samayoa next argues that the BIA erred in accepting the IJ's determination that his testimony was not credible. But, because we find that Samayoa failed to exhaust this aspect of his challenge, we conclude that we lack jurisdiction to review the BIA's acceptance of the adverse credibility finding that the IJ made.

In contending that we do have jurisdiction over this aspect of his challenge, Samayoa does not dispute that he failed to make this argument in his appeal to the BIA or that

"[o]rdinarily . . . an alien who neglects to present an issue to the BIA fails to exhaust his administrative remedies with respect to that issue and, thus, places it beyond our jurisdictional reach," Mazariegos-Paiz v. Holder, 734 F.3d 57, 62 (1st Cir. 2013); see also 8 U.S.C. § 1252(d)(1) (exhaustion requirement). Nonetheless, he contends that the government relied on the IJ's adverse credibility finding in arguing to the BIA that the IJ's ruling should be affirmed and that the BIA then affirmed that finding on the merits. See Mazariegos-Paiz, 734 F.3d at 63 (permitting a finding of exhaustion where "the agency has elected to address in sufficient detail the merits of a particular issue").

But, once again, we do not agree with how Samayoa reads the BIA's opinion. With respect to this issue, the BIA's opinion states only the following:

> Initially, we observe that on appeal, the respondent does not challenge the Immigration Judge's finding that the "overwhelming evidence shows" that the respondent is not credible. Accordingly, we find no clear error in the Immigration Judge's adverse credibility finding.

(Internal citation omitted). These two sentences -- given the use of the word "[a]ccordingly" to join them -- show that the BIA affirmed the IJ's adverse credibility finding only because Samayoa had not contested it. Thus, we lack jurisdiction to review the BIA's acceptance of the IJ's adverse credibility finding, see id.

at 62-63, and so we must dismiss the petition insofar as it seeks review of it.

## C.

Samayoa's final challenge is to the evidentiary basis for the IJ's ruling, as affirmed by the BIA, that he failed to show that he was more likely than not to be tortured if he were removed to Guatemala. In pressing this evidentiary challenge, Samayoa contends that the ruling may not be sustained, even if we consider only the documentary evidence that he submitted in his removal proceedings. But, once again, we disagree.

Samayoa appears to recognize that his imprisonment-based challenge to the IJ's ruling that he failed to show that he was more likely than not to be tortured rises and falls on the strength of the evidence in the record that distinguishes the treatment that he would likely suffer while imprisoned in Guatemala from the treatment that the average prisoner in that country would likely endure. After all, at oral argument, Samayoa's attorney made clear that Samayoa does not contend that conditions in Guatemalan prisons are such that all prisoners incarcerated there are more likely to be tortured than not. Moreover, he expressly denied making such a claim to the BIA. He therefore failed to exhaust this line of argument, see 8 U.S.C. § 1252(d)(1), and his claim in front of us must rest on his assertion that he faces a particularized risk of torture above and beyond the typical prisoner in Guatemala. Thus,

- 9 -

his challenge is, of necessity, only to the evidentiary basis for a factual finding, not a legal one, which the BIA determined was not clearly erroneous.

As we have explained, "where the BIA has adopted or affirmed the IJ's findings, the factual findings at issue before us on appeal from the BIA's decision remain the factual findings of the IJ."  Rosales Justo v. Sessions, 895 F.3d 154, 161 (1st Cir. 2018).  In consequence, "we do not draw a distinction between the two for the purposes of the standard of review."  Id.  Instead, "we review the factual findings -- which were originally made by the IJ but affirmed by the BIA -- under the substantial evidence standard, rejecting them only if the evidence in the record compels a contrary result."  Id.[3]

Samayoa's effort to show that the record compels the conclusion that he in particular is likely to be tortured if imprisoned in Guatemala -- which is the showing that he must make to demonstrate that the IJ's determination, affirmed by the BIA, lacked substantial evidence to support it -- is not persuasive. Samayoa does point to documentary evidence that shows that he is alleged to have committed crimes in Guatemala, that the government has issued warrants for his arrest, and that he would be targeted

---

[3] We have sometimes "referred to the findings we are reviewing as the 'BIA's factual findings,' when it would be more precise to describe them as the findings of the IJ that have been adopted or affirmed by the BIA."  Rosales Justo, 895 F.3d at 161–62.

for prosecution in that country if he were removed there. But, although this evidence is specific to Samayoa, it concerns only his likelihood of being imprisoned in Guatemala and not his likelihood of being singled out once imprisoned there for especially harsh treatment in comparison to other inmates in that country. Accordingly, Samayoa fails to show that the record compels a finding other than the one that the IJ reached, which means that we must reject this third aspect of his challenge as well.[4]

## III.

The petition for review is **denied in part and dismissed in part**.

---

[4] Samayoa also highlights social media posts condemning him. But nothing in the record suggests that the individuals who made the posts or anyone associated with them intend to torture Samayoa in prison, much less that they have the means to do so.