# United States Court of Appeals
## For the First Circuit

No. 20-1711

JANITO DECARVALHO,

Petitioner,

v.

MERRICK B. GARLAND,[*] Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Lipez, and Kayatta,
<u>Circuit Judges</u>.

Trina Realmuto, with whom Tiffany Lieu, National Immigration Litigation Alliance, Jennifer Klein, and Committee for Public Counsel Services were on brief, for petitioner.
Marie V. Robinson, with whom Jeffrey Bossert Clark, Acting Assistant Attorney General, Civil Division, Cindy S. Ferrier, Assistant Director, Office of Immigration Litigation, and Andrew N. O'Malley, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

November 17, 2021

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General William P. Barr.

**KAYATTA**, **Circuit Judge**. The Board of Immigration Appeals (BIA) held that Janito DeCarvalho's conviction for possession of oxycodone with intent to distribute in violation of Mass. Gen. Laws ch. 94C, § 32A(a), constitutes a "particularly serious crime" that makes him ineligible for withholding of removal. See 8 U.S.C. § 1231(b)(3)(B)(ii). The BIA also denied DeCarvalho's application for deferral of removal under the Convention Against Torture (CAT). DeCarvalho petitions for review of the BIA's decisions, principally arguing that the Attorney General's decision in Matter of Y-L- unlawfully presumes that all aggravated felonies involving trafficking in controlled substances are particularly serious crimes. See 23 I. & N. Dec. 270, 274-75 (U.S. Att'y Gen. 2002). We deny his petition for review insofar as he seeks CAT relief. We grant the petition in part, however, because the immigration judge (IJ) informed DeCarvalho, who was proceeding pro se, that he was eligible for potential relief only under the CAT. In so doing, the IJ treated DeCarvalho's conviction for drug trafficking as if it were a per se bar to withholding of removal, a position that the government now disavows on appeal. We remand to the agency with instructions to give DeCarvalho a new hearing to determine whether he is entitled to withholding of removal.

DeCarvalho is a native and citizen of Cape Verde. Between 2001 and 2003, DeCarvalho served as an officer in Cape Verde's national police force. In 2004, DeCarvalho left Cape Verde and came to the United States on a tourist visa. After his visa expired, DeCarvalho remained in the United States and was granted conditional permanent resident status in 2012. In 2015, DeCarvalho was convicted in state court of several offenses, including possession with intent to distribute oxycodone in violation of Mass. Gen. Laws ch. 94C, § 32A(a). He was sentenced to three and a half years' imprisonment.

Citing his oxycodone conviction as a basis for removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), the Department of Homeland Security initiated removal proceedings against DeCarvalho approximately two years after he completed his prison term. DeCarvalho appeared pro se before an IJ. The IJ informed DeCarvalho that "because of [his] drug trafficking conviction, [he was] only eligible to apply for . . . deferral under the [CAT]."

The IJ held a hearing on DeCarvalho's application for deferral of removal under the CAT. After DeCarvalho and his brother testified, the IJ confirmed his earlier pronouncement that DeCarvalho's prior conviction rendered him ineligible for any relief other than deferral of removal under the CAT. As to the

matter of withholding from removal, the IJ found that DeCarvalho had been convicted of a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii), rendering him ineligible to apply for withholding.

The IJ then analyzed whether DeCarvalho was eligible for deferral of removal under the CAT. DeCarvalho claimed that he faced potential harm from several sources: members of a criminal organization seeking retribution against his sister for testifying against them; criminals whom DeCarvalho had arrested when he worked as a police officer; and his former supervisors in the police force. Finding him credible, the IJ nevertheless concluded that DeCarvalho had not shown that it was more likely than not that he would be tortured by or with the acquiescence of government officials upon returning to Cape Verde.

Still proceeding pro se, DeCarvalho appealed to the BIA. The BIA adopted and affirmed the IJ's decision denying CAT relief. Citing Matter of Y-L-, the BIA also found that "[t]he conviction for a drug trafficking offense is also a particularly serious crime barring the respondent from withholding of removal." DeCarvalho then filed a timely petition for review with this court.

Now represented by counsel, DeCarvalho makes two basic arguments that we will consider in turn: that the IJ and the BIA erred in finding that his prior conviction rendered him ineligible for withholding; and that the IJ and BIA also erred in denying his

- 4 -

request for CAT protection.[1]  We have jurisdiction to review the constitutional and legal questions raised in this petition.  8 U.S.C. § 1252(a)(2)(D).

## II.

### A.

A noncitizen is ineligible for withholding of removal "if the Attorney General decides" that the noncitizen, "having been convicted by a final judgment of a particularly serious crime[,] is a danger to the community of the United States."  8 U.S.C. § 1231(b)(3)(B)(ii).  The statute further provides that:

> [A]n alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime.  The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of the sentence imposed, an alien has been convicted of a particularly serious crime.

Id. § 1231(b)(3)(B).  The definition of "aggravated felony" includes "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking

---

[1]  DeCarvalho also argues that the IJ and the BIA lacked jurisdiction over his removal proceedings because he received a Notice to Appear that lacked the date and time of his hearing.  He recognizes, however, that we have already rejected the argument that such defects preclude the exercise of jurisdiction over removal proceedings.  See Goncalves Pontes v. Barr, 938 F.3d 1, 5–7 (1st Cir. 2019).

- 5 -

crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B).

DeCarvalho does not dispute that his drug trafficking conviction satisfies this definition of an "aggravated felony." And the government agrees that because DeCarvalho was sentenced to fewer than five years of imprisonment, his conviction does not qualify automatically as a particularly serious crime under the first sentence of the text block-quoted above. So the key question is whether the Attorney General has lawfully determined that notwithstanding the length of DeCarvalho's sentence, his aggravated felony conviction is for a "particularly serious crime."

The BIA answered "yes" to this question by pointing to the Attorney General's opinion in Matter of Y-L-, which established a presumption that an aggravated felony involving drug trafficking is a particularly serious crime even if it does not result in a sentence of five or more years. 23 I. & N. Dec. at 273–75. That presumption may only be rebutted by a showing of "extraordinary and compelling circumstances." Id. at 274. Specifically, the noncitizen must show that the felony conviction in question involved, "at a minimum":

> (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal

- 6 -

activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

Id. at 276–77.

DeCarvalho argues that Matter of Y-L- represents an unreasonable interpretation and application of the Attorney General's authority under section 1231(b)(3)(B), and therefore cannot be sustained as a matter of deference otherwise due under Chevron, U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984). DeCarvalho's argument proceeds in two parts. First, he contends that Matter of Y-L- effectively operates as a per se rule rather than a presumption. After all, he notes, the government does not point to even a single instance in which the so-called presumption has been overcome.[2] Second, DeCarvalho argues that the first sentence

_____

[2] The government cites Diaz v. Holder, in which the IJ determined that the noncitizen rebutted the presumption. 501 F. App'x 734, 736–37 (10th Cir. 2012). But, the BIA overturned that decision on appeal, and the Tenth Circuit affirmed. Id. at 737–38 (concluding the BIA did not abuse its discretion because it "engaged in an individualized determination").

The closest instance (though not cited by the government) appears to be a statement not by any IJ, but by the Third Circuit panel in Lavira v. Attorney General, that the "facts of this offense appear to place him squarely within the [Matter of Y-L- exception]." 478 F.3d 158, 165 (3d Cir. 2007), overruled on other grounds by Pierre v. Att'y Gen., 528 F.3d 180, 189 (3d Cir. 2008) (en banc). But that statement was made only in vacating a BIA

- 7 -

of section 1231(b)(3)(B) limits the universe of offenses that may be treated as per se particularly serious crimes to aggravated felonies resulting in sentences of imprisonment of five or more years. Because DeCarvalho was sentenced to fewer than five years, he contends that the Attorney General lacks the authority to treat him as per se ineligible for withholding of removal.

In response, the government eschews any contention that the Attorney General has the discretion under section 1231(b)(3)(B)(ii) to determine that convictions for drug trafficking are categorically convictions for particularly serious crimes if the term of imprisonment falls short of five years. Rather, the government argues only that Matter of Y-L- merely provides a strong presumption that nevertheless can be overcome through individualized determinations. And, it explains, creating a strong but rebuttable presumption is a reasonable application of the statute. See Miguel-Miguel v. Gonzales, 500 F.3d 941, 948 (9th Cir. 2007) (holding that the authority to create this presumption is a reasonable interpretation of the statute).

Consistent with that position, the government agrees with DeCarvalho's alternative argument; i.e., that if Matter of Y-L- does not effectively categorize all drug trafficking

---

decision to the contrary because (as here) the IJ had not considered the matter. There is no indication that the noncitizen succeeded on remand in rebutting the presumption.

convictions as convictions for particularly serious crimes, then the IJ erred in telling the pro se DeCarvalho prior to any hearing that he was not eligible for withholding.  Hence, the government agrees that remand is required.

That position poses something of a puzzle for DeCarvalho.  If we were to proceed now and agree with DeCarvalho that Matter of Y-L- effectively creates a categorical rule, he could lose -- and a remand become useless -- if we were to find that the Attorney General could adopt such a categorical rule.  On the other hand, neither the Attorney General nor the BIA here has claimed the statutory authority to deem a crime categorically particularly serious.

Given the foregoing partially-aligned positions of the parties, we think it best to take this a step at a time.  We will vacate and remand the finding that DeCarvalho is not eligible for withholding.  See Quintero v. Garland, 998 F.3d 612, 644 (4th Cir. 2021) (remanding for "further fact-finding and reconsideration").[3] On remand, DeCarvalho will then have an opportunity to see if he can rebut Matter of Y-L-'s so-called presumption, and the government will have the opportunity to supplement the record with any evidence that the presumption can be overcome.  See Miguel-

---

[3] DeCarvalho requests reassignment to a different IJ on remand.  We express no view on whether this case should be reassigned.

Miguel, 500 F.3d at 947 ("Presumably . . . there will be some cases in which [the Matter of Y-L-] exception applies.").[4]  Should DeCarvalho lose on remand based on Matter of Y-L-, he will then still have the opportunity to challenge Matter of Y-L- on appeal.

This will also provide the Attorney General with an opportunity to consider whether, based on the experience of two decades and Congress's increasingly nuanced view of drug trafficking offenses,[5] Matter of Y-L- may have turned out to over-shoot the mark.

**B.**

DeCarvalho makes a separate argument based on the text of section 1231(b)(3)(B)(ii).  He points out that the statute renders a person ineligible for withholding "if the Attorney General decides" that the person "having been convicted by a final judgment of a particularly serious crime is a danger to the community."  (emphasis supplied).  DeCarvalho contends that this text plainly requires the Attorney General to find not just that DeCarvalho committed a particularly serious crime, but that he is

---

[4]  The government assures us that there are cases in which noncitizens have fit within the presumption, although none are in this record. Remand will provide a full opportunity for the government and the BIA to survey those rare cases.

[5]  See, e.g., First Step Act, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220-21 (2018); Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat 2372(2010).

also a danger to the community, a finding that might be belied by his behavior since he was released from prison several years ago.

The government responds to this argument in a footnote, contending that our decision in Valerio-Ramirez v. Sessions, 882 F.3d 289, 296 (1st Cir. 2018), rejected this precise argument. Valerio-Ramirez did indeed describe as "upheld" the BIA's interpretation that a person found to have been convicted of a particularly serious crime "necessarily represents a danger to the community." Id. at 295 (quoting Velerio-Ramirez v. Lynch, 808 F.3d 111, 115 n.7 (1st Cir. 2015)). But the BIA's criteria for labeling a crime particularly serious in that case included "whether the type and circumstances of the crime indicate that the alien will be a danger to the community." Id. at 115 (quoting Matter of Frentescu, 18 I. & N. Dec. 244, 247 (BIA 1982) (describing this inquiry as the "most important[]")). For that scheme, the court concluded that "no separate dangerousness assessment is required." Id. Matter of Y-L-, by contrast, arguably does not so incorporate a finding that the noncitizen will be a danger to the community into its consideration of what is presumed to be a particularly serious crime.

What the BIA makes of this, we do not know. The government does not argue that DeCarvalho failed to raise the issue, but the BIA certainly says nothing of it in its opinion. Given that we are remanding on the question of whether DeCarvalho's

- 11 -

conviction renders him ineligible for withholding, we leave further consideration of this related argument to the BIA in the first instance. Velerio-Ramirez, 808 F.3d at 117 ("[W]hen the BIA has not spoken on an issue that the statute has placed in its hands, remand is appropriate to give the BIA an opportunity to address the issue in the first instance.").

## III.

We turn next to DeCarvalho's claim for deferral of removal under the CAT. When the BIA's decision adopts parts of the IJ's decision and adds its own analysis, we review the two decisions together. See Guerrero v. Holder, 667 F.3d 74, 76 (1st Cir. 2012). To succeed on a CAT claim, DeCarvalho must show that it is "more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). For purposes of evaluating a CAT claim, torture is defined as:

> (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

Samayoa Cabrera v. Barr, 939 F.3d 379, 382 (1st Cir. 2019) (quoting Settenda v. Ashcroft, 377 F.3d 89, 94 (1st Cir. 2004)); see also 8 C.F.R. § 1208.18(a).

DeCarvalho argues that he would be subjected to torture upon his return to Cape Verde for three reasons: First, his sister testified against certain "criminal organizations;" second, people he arrested as a police officer between 2001 and 2003 threatened him; and, third, a police superintendent was angry with him because he left the police force without permission and did not create the proper paperwork.

As to the first reason, the IJ pointed out that the Cape Verde government is protecting his sister and is prosecuting the crimes, which means he failed to establish that the criminal organizations would harm him with the acquiescence of the government. As to the second reason, the IJ found that the last such threat was over thirteen years ago and that there is no reason to suspect that those who made the threat would seek him out for torture today. Finally, as to the third reason, the IJ was not convinced that the police superintendent would seek out DeCarvalho eighteen years later to torture him for not following proper procedures when he left the police force.

The BIA affirmed. In rejecting DeCarvalho's CAT claim, the BIA stated:

> Based on our review of the record, we discern no clear error in the [IJ]'s determination that it is not more likely than not that the respondent would be tortured in Cape Verde by individuals previously arrested by the respondent while he was a police officer, his former police superintendent, or criminal

> organizations that his sister testified
> against. See Matter of Z-Z-O-, 26 I. & N.
> Dec. 586, 590 (BIA 2015) ("[A]n Immigration
> Judge's predictive findings of what may or may
> not occur in the future are findings of fact,
> which are subject to a clearly erroneous
> standard of review."). We also agree with the
> [IJ] that the evidence does not demonstrate
> that the Cape Verdean authorities would
> acquiesce in, consent to, or exhibit willful
> blindness to any torture of respondent by
> private actors. See Granada-Rubio v. Lynch,
> 814 F.3d 35, 39 (1st Cir. 2016).

(record citations omitted) (emphasis added).

DeCarvalho first argues that the BIA applied the wrong standard of review to the IJ's decision. He then argues that its decision is in any event unsupported by substantial evidence. We address these arguments in turn.

## A.

DeCarvalho argues that the BIA failed to apply the proper standard of review because its decision referred only to the absence of "clear error" in the IJ's determination about the likelihood that DeCarvalho would be tortured if removed to Cape Verde. He argues that whether he would be subject to "torture" justifying CAT relief is a question of law that the BIA should have decided de novo. See Matter of R-A-F-, 27 I. & N. Dec. 778, 779 (U.S. Att'y Gen. 2020).

In so arguing, DeCarvalho glosses over the several components of a "torture" finding and misapprehends the bases on which the IJ and then the BIA denied DeCarvalho's request for

relief.   In assessing whether CAT relief is appropriate, an IJ makes findings of fact (e.g., whether a person is likely to suffer a particular harm and the role of the foreign government in causing or allowing that harm) and also determines how the law applies to those facts (e.g., whether such harm rises to the level of torture and whether the government's role renders the harm "by or at the instigation of or with the consent or acquiescence of a public official," Samayoa Cabrera, 939 F.3d at 382 (citation omitted)). The BIA reviews the former for clear error and the latter de novo. See id. at 382-83; see also Matter of Z-Z-O-, 26 I. & N. Dec. 586, 590-91 (BIA 2015).

Here, DeCarvalho points to two sources of alleged torture:  people he long ago arrested, and criminals against whom his sister testified.[6]  As to the arrestees, the IJ was unpersuaded that they would even seek out DeCarvalho, much less harm him with the acquiescence of the government.  This determination about the likelihood that harm would befall DeCarvalho upon his return was a finding of fact, not a legal conclusion as to whether any such harm would qualify as torture.  The BIA therefore appropriately reviewed that finding for clear error.  See Al Amiri v. Rosen, 985

---

[6]  Before the IJ and the BIA, DeCarvalho also claimed that his former supervisors in the police force posed a threat to him. He has not renewed that argument before this court, and it is therefore waived.  Marquez-Paz v. Barr, 983 F.3d 564, 565 (1st Cir. 2020).

F.3d 1, 8 (1st Cir. 2021) (affirming the BIA's determination that the IJ did not "clearly err" in concluding that applicant's proffered evidence did not show "that it is more likely than not that he will suffer" the harm he feared).

As to harm at the hands of the criminal organizations against whom his sister testified, the IJ found that, even if such harm transpired, it would not be "on behalf of or with the acquiescence of the government," which had prosecuted those organizations and taken steps to protect his sister. DeCarvalho contends that this conclusion was largely if not entirely a determination of law. He then argues that the BIA erred by reviewing it only for clear error.

We disagree with his description of what the BIA did. When the BIA does not expressly specify the standard of review it is applying, we have concluded that the BIA applied the proper test when the agency's decision calls the IJ's determination "correct" and "cite[s] legal authority for its conclusion." Samayoa Cabrera, 939 F.3d at 383. Here, the BIA stated that it "also agree[d] with the [IJ]" on the issue of government acquiescence and cited to this court's precedent as support. This

suggests not deference to, but rather alignment with, the IJ's assessment of DeCarvalho's proffered evidence of acquiescence.[7]

For these reasons, we reject DeCarvalho's arguments that the BIA applied an incorrect standard of review when evaluating DeCarvalho's CAT claim.

**B.**

We turn finally to DeCarvalho's argument that substantial evidence did not support the denial of CAT relief. We will uphold the BIA's findings "if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Agustin v. Whitaker, 914 F.3d 43, 45 (1st Cir. 2019) (quoting Touch v. Holder, 568 F.3d 32, 37–38 (1st Cir. 2009)). A BIA decision lacks the support of substantial evidence when the record compels a conclusion contrary to the one reached by the agency. See Ruiz-Guerrero v. Whitaker, 910 F.3d 572, 575 (1st Cir. 2018).

DeCarvalho contends on this appeal that if he were returned to Cape Verde, he would more likely than not be tortured by either people whom he had previously arrested as a police

---

[7] DeCarvalho additionally contends that the BIA's use of the word "also" implied that the BIA only agreed with the IJ's determination subject to the "clear error" standard of review employed as to the other sources of claimed harm. We think this places far too much weight on the word "also" and ignores the plain meaning of "agree." If anything, the BIA's statement that it "also agree[d]" with the IJ's conclusion signals even more clearly that it likely agreed with the IJ's findings of fact, as well.

- 17 -

officer or members of a crime organization seeking retribution against his sister. We find that the record before the agency does not compel a finding that he is more likely than not to be tortured upon returning to Cape Verde.

We start with DeCarvalho's claim that people he arrested as a police officer pose an ongoing threat to him. He points to threatening social media messages he received from some of these individuals in 2005 and 2006. DeCarvalho argues that these people were prosecuted for serious crimes and are thus likely to present a danger to DeCarvalho if he is returned to Cape Verde. And he contends that because these individuals were sending him messages over a year after he departed Cape Verde, there is reason to think the threat to him persists.

The IJ was unpersuaded that there are any people "that [DeCarvalho] arrested who are currently looking for him today or would seek him out to torture him today." The record does not compel a contrary conclusion. The passage of over a decade since the last threatening message to DeCarvalho weakens any inference that the people whom he arrested continue to pose a threat to him.

DeCarvalho's claim that he is likely to be tortured by the criminal organization pursuing his sister arguably presents a closer question, but substantial evidence also supports the rejection of that claim. At the hearing before the IJ, DeCarvalho explained that his sister had testified against members of a

- 18 -

criminal organization in exchange for a more lenient sentence on drug trafficking charges. According to DeCarvalho, the criminal organization attempted to kill his sister by carrying out a drive-by shooting at her home. After the shooting, Cape Verdean police placed DeCarvalho's sister in protective custody. One of DeCarvalho's brothers testified that their mother had received death threats and that someone had gone to their mother's house to kill her. DeCarvalho's mother subsequently left Cape Verde to live in the United States with DeCarvalho's brother.

As we have already explained, above, the BIA agreed with the IJ's determination that DeCarvalho failed to establish that the criminal organization threatening DeCarvalho's sister would be acting on the government's behalf or with its acquiescence if the same organization was to harm DeCarvalho. In so concluding, the IJ acknowledged that DeCarvalho's sister was in danger in Cape Verde and that his mother feared harm but emphasized that the Cape Verdean government was protecting DeCarvalho's sister and was prosecuting the organization that threatened her.

The BIA supportably found that Cape Verde's government would not acquiesce in, consent to, or exhibit willful blindness to any harm to DeCarvalho that the criminal organization might cause. The government's efforts to protect DeCarvalho's sister cut against the suggestion that the government would acquiesce to the criminal organization's potential actions against him.

DeCarvalho cannot show that a contrary conclusion is required. DeCarvalho argues that the threat to his mother indicates that he is likely to become a target himself. And he contends that the Cape Verdean government's efforts to protect his sister do not show that Cape Verde will use its limited law enforcement resources to protect him. But these concerns about how the Cape Verdean police will prioritize DeCarvalho's protection and the overall effectiveness of its law enforcement efforts do not compel the conclusion that Cape Verde has acquiesced to violent acts by the criminal organization. DeCarvalho has not shown that Cape Verde's government will not continue to prosecute the organization and resist its efforts to intimidate witnesses against it.

For these reasons, we conclude that substantial evidence supports the denial of DeCarvalho's claim for CAT relief.

**IV.**

The petition for review is denied in part, insofar as DeCarvalho seeks deferral of removal under the Convention Against Torture, and granted in part, insofar as the BIA deemed DeCarvalho ineligible for withholding of removal. We vacate the denial of withholding and remand for further proceedings consistent with this opinion.