# United States Court of Appeals
## For the First Circuit

No. 21-1335

JOSE PEDRO SANTOS FARIA BARROS,

Petitioner,

v.

MERRICK B. GARLAND, United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Howard and Thompson, Circuit Judges.

Manuel R. Pires, with whom Rodrigues Pires PC was on brief, for petitioner.
Rodolfo D. Saenz, Trial Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, with whom Brian Boynton, Acting Assistant Attorney General, Civil Division, and Zoe J. Heller, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.
Gilles Bissonnette and SangeYeob Kim were on brief for amicus curiae American Civil Liberties Union of New Hampshire.

April 19, 2022

**THOMPSON, Circuit Judge**. We again face a claim that the Board of Immigration Appeals ("BIA") violated its standard of review when reviewing the grant of discretionary relief from removal by an Immigration Judge ("IJ"). After clearing some jurisdictional hurdles along the way, we conclude the BIA impermissibly changed an IJ's balance-tipping factual finding. We thus grant the petition for review.

## Background

Jose Pedro Santos Faria Barros first entered the United States as a lawful permanent resident in 1991, at the age of five. He came with the rest of his family, including his mother, father, and siblings, from Cape Verde. He has resided here ever since. In fact, Barros has never been back to Cape Verde. All of his immediate family resides here, too.

Barros has a history of depression, anxiety, self-harm, and drug use. He attributes his struggles to a fall when he was 4 years old in which he struck his head. He began to experience headaches around age 11, and he says those headaches led to difficulty concentrating, which in turn led to depression and anxiety. His depression and anxiety, in turn, led to suicidal ideations and at least three suicide attempts.

Barros also began using drugs around the time he turned 18. He says it started with crack cocaine, which he used to cope with his depression and anxiety. At age 32, he also started to

use heroin. He's been to treatment at least three times, though he often relapsed. He last sought treatment not long before he was hauled before the immigration court in this case. And, as of February 2020, he had been sober for about ten months.

Beginning in 2003, Barros began amassing a criminal rap sheet. He's been convicted six times, including four convictions for possession of controlled substances and two for breaking and entering. He's also been arrested at least an additional ten times for charges such as breaking and entering, malicious destruction of property, shoplifting, disorderly conduct, assault and battery, and prison vandalism. Barros has said that, on at least one of these occasions, he stole to get money for drugs.

Barros's run-ins with the law at some points involved his behavior towards his family in his efforts to get cash for drugs. First, in 2015, Barros went to his parents' house to get money. When his mother refused, he grabbed her by the throat, struck his father on the head, and smashed a crystal vase and a flat-screen television. Barros was charged with assault and battery on a person 60 years or older, as well as malicious destruction of property, though the charges were later dismissed. Second, the next year, Barros got into another argument with his father, which although did not spawn an arrest, resulted in his father taking out a short-lived restraining order against him. Finally, in October 2017, Barros was arrested after he went to his

sister's house, high on drugs, again demanding money for narcotics. When she refused, and Barros's niece told him that he needed help, Barros became angry, yelling and raising his arms in the air as if he was going to strike his niece. After the commotion continued outside, Barros's sister and niece went back into the house and locked the door. But Barros, undeterred, dropped his shoulder into the door and broke the chain lock. He was later arrested for assault, trespassing, and breaking and entering.

Also in 2017, Barros pled guilty to and was convicted of possession of crack cocaine. He initially received a probationary sentence, but after violating his probation, he was sentenced to one year in prison. After his release in March 2019, he moved in with his parents, where he took care of his aging mother.

When November 2019 rolled around, immigration officials knocked on Barros's door, handed him a notice alleging his deportability from the United States, and hauled him off in cuffs. While he was still in custody but awaiting his final hearing, Barros's mother passed away. And that brings us to the immigration proceedings at issue in this petition.

### Legal Primer

Before diving into what happened in those proceedings, we begin with a brief overview of the relevant legal principles.

Cancellation of removal is one of many forms of relief from removal. See 8 U.S.C. § 1229b(a). To qualify under the

- 4 -

relevant provision for cancellation, a lawful permanent resident must establish that she: (1) has been lawfully admitted for permanent residence for not less than 5 years; (2) "has resided in the United States continuously for 7 years after having been admitted in any status"; and (3) "has not been convicted of any aggravated felony." Id. § 1229b(a)(1)-(3).[1]

Even so, establishing these three criteria does not automatically entitle the individual to relief: "[T]he Attorney General's decision to grant such relief is discretionary and 'amounts to an act of grace.'" Cabrera v. Lynch, 805 F.3d 391, 394 (1st Cir. 2015) (quoting Sad v. INS, 246 F.3d 811, 819 (6th Cir. 2001)). It is the applicant who bears the burden of proving both that she satisfies the eligibility requirements and that she merits a favorable exercise of administrative discretion. 8 U.S.C. § 1229a(c)(4)(A).

In exercising that discretion, IJs (and later, the BIA) apply the host of factors laid out in Matter of C-V-T-, 22 I. & N. Dec. 7, 11 (BIA 1998). Favorable factors to consider include: (1) family ties in the United States; (2) duration of residence here

---

[1] Different provisions apply depending on whether the individual seeking relief is a lawful permanent resident, see 8 U.S.C. § 1229b(a), is a nonpermanent resident, see id. § 1229b(b)(1), is a battered spouse or child, see id. § 1229b(b)(2), or falls under other special provisions, see 1 Charles Gordon et al., Immigration Law and Procedure § 64.04[1] (2021).

"(particularly when the inception of residence occurred at a young age)"; (3) evidence of hardship to the applicant and her family in the event of deportation; (4) service in the U.S. Armed Forces; (5) history of employment; (6) property or business ties here; (7) value and service to the community; (8) proof of "genuine rehabilitation" if the applicant has a criminal record; and (9) evidence of the applicant's "good character." Id. On the other hand, the IJ must also consider the adverse factors, including: (1) the nature and grounds underlying the removal; (2) significant violations of the immigration laws; (3) the applicant's criminal record and its "nature, recency, and seriousness"; and (4) other evidence of the applicant's bad character or "undesirability as a permanent resident of this country." Id. Where adverse factors are present, the BIA has said, applicants may need to offset them by showing unusual or outstanding equities in the opposite direction. Matter of Arai, 13 I. & N. Dec. 494, 496 (BIA 1970); see Matter of C-V-T-, 22 I. & N. Dec. at 11–12.

In reviewing decisions of an IJ, the BIA is bound by certain standards of review. When reviewing the IJ's decision on questions of law, discretion, and judgment, the BIA may exercise de novo review. 8 C.F.R. § 1003.1(d)(3)(ii) (2020).[2]

_____

[2] The appeal in this case was filed on July 17, 2020. So the version of 8 C.F.R. § 1003.1 in force at that time applies here, and not the amendments effective January 15, 2021. See Appellate Procedures and Decisional Finality in Immigration Proceedings;

But when reviewing factual conclusions, the BIA's power is much narrower. That is so because "[t]he IJ has the front-line duty of finding the facts." Chen v. Holder, 703 F.3d 17, 22 (1st Cir. 2012). The BIA is prohibited from "engag[ing] in factfinding in the course of deciding appeals." 8 C.F.R. § 1003.1(d)(3)(iv) (2020). Rather, when the BIA reviews the IJ's findings of fact, it reviews them only for clear error. Id. § 1003.1(d)(3)(i); see Adeyanju v. Garland, 27 F.4th 25, 33 (1st Cir. 2022) (further detailing the clear-error standard applied by the BIA).

To find clear error, the BIA must be "left with the definite and firm conviction that a mistake has been committed." Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54878-01, 54889 (Aug. 26, 2002) [hereinafter "BIA Reforms"]. In other words, "to show clear error [one] 'must show that the contested finding stinks like a 5 week old, unrefrigerated, dead fish.'" Adeyanju, 27 F.4th at 33 (quoting United States v. Baptiste, 8 F.4th 30, 42 (1st Cir. 2021)). It is not enough to "show that the finding is probably wrong, for [the BIA] can reverse on clear-error grounds only if -- after whole-record review -- it has a strong, unyielding belief that the [immigration] judge stumbled." Id. (cleaned up, but with

_____

Administrative Closure, 85 Fed. Reg. 81588, 81588 (Dec. 16, 2020) (noting the amendments "apply only to appeals filed . . . on or after the effective date of the final rule").

new alterations added) (quoting United States v. Rivera-Carrasquillo, 933 F.3d 33, 42 (1st Cir. 2019)).

## The Immigration Proceedings

Before the IJ, Barros conceded removability. To avoid removal, he applied for cancellation of removal and requested voluntary departure. The parties agreed that Barros satisfied the statutory prerequisites for each. Thus, the only issue before the IJ was whether Barros merited a favorable exercise of administrative discretion.

So the IJ took evidence on the discretionary factors, including Barros's own testimony, a gob of documentary evidence concerning his criminal and medical history, letters from his family, and a declaration from his father. Barros testified extensively concerning his addiction and mental health challenges, his criminal record, and his family relationships. His father wrote in his declaration that, notwithstanding their prior conflicts, he wanted his son to stay with him.

After finding Barros a credible witness, the IJ began by identifying the positive factors weighing in favor of a favorable exercise of discretion. The court noted that Cape Verde, the country to which Barros would be deported, has a history of human-rights abuse and generally poor conditions. Barros, the IJ also found, has been in the United States since he was 5 years old, has spent nearly his entire life here, and has his entire family here.

The IJ further highlighted Barros's efforts at sobriety and his history of employment, though the latter was spotty.

And, critically to the issues on appeal, the IJ identified as another positive equity "the hardship to [Barros's] family in light of the recent death of his mother from COVID-19" if Barros were removed, which the IJ said "is significant and is the factor which ever so slightly tips the scales." According to the IJ, Barros's father already experienced a significant loss in the death of his wife of over fifty years, and "[t]he removal of a child on top of that . . . is extreme hardship to [Barros]'s father."

The IJ found some negative factors, too. The IJ detailed Barros's criminal record, including his violence towards family members and his relapses into criminal and violent behavior related to his struggles with drug addiction. Continuing, the IJ noted that Barros has not paid child support since 2015, and he presented no evidence that he paid taxes.

Weighing the factors, the IJ found that Barros merited a favorable exercise of administrative discretion. The court specifically noted that the hardship to Barros's family if he was removed, along with the benefits to Barros's mental-health treatment if he remained here, were the factors that made this close case weigh in Barros's favor. Alternatively, the IJ also concluded that Barros should be granted voluntary departure.

Believing the IJ got it wrong, DHS appealed to the BIA, and the BIA sustained the appeal. Upon its "de novo review," the BIA concluded that Barros did not merit a favorable exercise of discretion. The BIA surveyed the positive and negative factors, including almost all the factors identified by the IJ.[3] And the BIA "acknowledge[d] that there are sympathetic factors in this case," including "that some family members, particularly [Barros's] father, may suffer some hardship." Yet, the BIA said, the positive factors didn't outweigh Barros's adverse factors, particularly his lengthy criminal record. The BIA thus concluded that Barros did not merit cancellation of removal, and "[f]or the same reasons" concluded he did not merit voluntary departure either. Barros timely petitioned for our review.

## Our Take

## I.  Jurisdiction

As always, we begin by checking our jurisdiction. That inquiry in this case leads us down two paths: one argued by the parties and one not.

---

[3] The one positive factor the IJ identified that the BIA appeared to not consider was Barros's (albeit limited) employment history. Instead, the BIA appeared to consider Barros's "sparse" work history as a negative factor. Also, the BIA did not identify Barros's failure to pay taxes as a negative factor, even though the IJ did.

- 10 -

## A. Jurisdiction-stripping provision

The government contends we lack jurisdiction over Barros's petition because it comes from a denial of discretionary relief. Under 8 U.S.C. § 1252(a)(2)(B), we typically lack jurisdiction to review the BIA's discretionary remedy of cancellation of removal. See Tacuri-Tacuri v. Garland, 998 F.3d 466, 471 (1st Cir. 2021); see also Adeyanju, 27 F.4th at 36. But as a general proposition, we have jurisdiction over petitions for review from BIA denials of discretionary forms of relief if the petitions raise "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); see Adeyanju, 27 F.4th at 36. As we said just recently, claims that the BIA misapplied (or failed to apply) the proper standard of review can give rise to legal questions. Adeyanju, 27 F.4th at 37; see also Perez-Trujillo v. Garland, 3 F.4th 10, 22 (1st Cir. 2021). We remain mindful, however, that "the presence of a constitution or legal question is a 'matter of substance, not a function of labeling.'" Tacuri-Tacuri, 998 F.3d at 471 (quoting Alvarado v. Holder, 743 F.3d 271, 275 (1st Cir. 2014)).

Though the government contends that Barros's claims are attacks at the BIA's discretionary conclusion thinly veiled as claims of legal error, we are not convinced. Rather, after reviewing Barros's claim that the BIA misapplied the clear-error standard of review, we conclude it properly raises a legal question

over which § 1252(a)(2)(D) grants us jurisdiction.  See Adeyanju, 27 F.4th at 37 ("Just as a petitioner may not cloak her attacks on discretion in question-of-law garb, '[t]he BIA cannot reverse an IJ's findings and cloak its actions in the euphemistic language of reweighing.'" (quoting Zhu v. U.S. Att'y Gen., 703 F.3d 1303, 1315 (11th Cir. 2013))).

### B. Exhaustion

Another jurisdictional wrinkle remains.  Per statute, we may review final orders of removal only if the immigrant "has exhausted all administrative remedies available to [her] as of right."  8 U.S.C. § 1252(d)(1).  Administrative exhaustion serves a panoply of purposes.  For one, allowing courts to take first crack at legal issues within the agency's -- here, the BIA's -- ken "would effectively usurp the agency's function." Mazariegos-Paiz v. Holder, 734 F.3d 57, 62 (1st Cir. 2013).  Exhaustion also "afford[s] the parties the full benefit of the agency's expertise and allowing the agency the first opportunity to correct its own bevues."  Id. at 63.

The exhaustion requirement "constitutes a limitation on our power of review."  Id. at 62.  And though the government did not raise exhaustion in its initial briefing here, this jurisdictional requirement cannot be waived.  See García-Cruz v. Sessions, 858 F.3d 1, 7 (1st Cir. 2017).

Turning to the exhaustion issue here, we previously said in a case addressing claims of "impermissible factfinding" by the BIA that such a claim "is unexhausted unless and until the [petitioner] files a timely motion asking the BIA to reconsider its actions." Meng Hua Wan v. Holder, 776 F.3d 52, 57 (1st Cir. 2015). Yet here, Barros did not file any motion to reconsider with the BIA. Instead, he vaulted right to us to claim that the BIA erred in deciding his appeal. But after taking a closer look at Wan, we conclude that Barros was not bound to file another motion with the BIA to properly preserve his arguments here. Allow us to explain.

In Wan, the petitioner found himself in immigration court after being arrested on allegations related to a bogus green card. 776 F.3d at 55. The problem was that he also faced removal proceedings eleven years earlier in 2001 at which he never appeared. Id. He said, though, that he had hired a lawyer for that proceeding, and the lawyer told him he didn't have to attend court hearings or worry about anything. Id. Turns out, Wan's lawyer didn't do anything. Instead, no one ever showed up to any of Wan's prior court dates, and he was ordered removed in absentia. Id. at 54-55.

So, when he was hauled before the IJ again in 2013, Wan moved to reopen his prior order of removal, claiming (among other grounds) ineffective assistance of counsel. Joint Appendix at

- 13 -

198–201, Wan, 776 F.3d 52 [hereinafter "Wan J.A."]. When it came time to rule on the motion to reopen raising his claims of ineffective assistance, the IJ did not pass on the merits of his claims, instead denying the motion simply because it was untimely. Id. at 191.[4] Indeed, the IJ specifically said: "[T]he Court declines to address the merits of the Respondent's claim that he received ineffective assistance of counsel." Id. at 191 n.7.

On appeal to the BIA, the BIA took another tack. Citing its standard for ineffective-assistance claims, see Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988), the BIA concluded that Wan "failed to comply with the procedural prerequisites" for his claim, Wan J.A. at 16.[5] And, the BIA said, Wan's case "is not an obvious

---

[4] The IJ also concluded that, for other reasons, sua sponte reopening was not appropriate either. Id. at 191–92.

[5] Under Matter of Lozada, an immigrant seeking to make out a claim of ineffective assistance of counsel must support her claim with:

> (1) an affidavit explaining the petitioner's agreement with counsel regarding legal representation; (2) evidence that counsel has been informed of the allegations of ineffective assistance and has had an opportunity to respond; and (3) if it is asserted that counsel's handling of the case involved a violation of ethical or legal responsibilities, a complaint against the attorney filed with disciplinary authorities or, in the alternative, an explanation for why such a complaint has not been filed.

Ferreira v. Barr, 939 F.3d 44, 46 (1st Cir. 2019) (quoting Pineda v. Whitaker, 908 F.3d 836, 839 n.2 (1st Cir. 2018)); see Lozada, 19 I. & N. Dec. at 639.

- 14 -

case of ineffective assistance." Id. The BIA made that conclusion even though Wan had filed an affidavit from his wife and an unsworn, unsigned declaration of his own, detailing the scam pulled over by the supposed immigration attorney and their efforts, to no avail, to track him down to hold him accountable. Id. at 207-09, 256-59.

Wan petitioned for our review. He claimed the BIA engaged in impermissible factfinding because the findings the BIA made were "not made by the immigration judge and [were] not contained in the record." Br. of Pet. at 17-18, Wan, 776 F.3d 52. We said that claim was not exhausted because it was "directed to the BIA's actions rather than to anything that happened before the IJ." Wan, 776 F.3d at 57. We reasoned that "the core purpose of the exhaustion requirement is frustrated when . . . the BIA's decision gives rise to a new issue and the [immigrant] fails to use an available and effective procedure for bringing the issue to the agency's attention." Id. Thus, we said, claims of "impermissible factfinding" are not exhausted unless a motion to reconsider is filed with the BIA. Id. (emphasis added).

While at first blush Wan's holding appears to be broad in reach, we think that Wan's exhaustion requirement is best read to be limited in scope to cases presenting similar circumstances to those present there: when the BIA makes findings of disputed

- 15 -

issues of fact concerning legal claims that the IJ did not consider in the first instance.[6]

We think that is so because Wan's principal complaint was that the IJ never had the opportunity to make front-line findings concerning his ineffective-assistance claim. Wan J.A. at 17. It was not an argument that the BIA applied the wrong legal standard to the facts at issue as found by the IJ. Indeed, the BIA regulations in effect at the time of Wan's appeal (which mirror those applicable here) drew a distinction between review of the findings the IJ actually made and the procedure for when factual findings still need to be made. Compare 8 C.F.R. § 1003.1(d)(3)(i) (2014) (providing that "[f]acts determined by the [IJ] . . . shall be reviewed only to determine whether the findings of the [IJ] are clearly erroneous" (emphasis added)), with id. § 1003.1(d)(3)(iv) (providing that "[a] party asserting that the [BIA] cannot properly resolve an appeal without further factfinding must file a motion for remand," and that "[i]f further factfinding is needed in a particular case, the [BIA] may remand"). And in Wan, there were no factual findings to review for clear error, since the IJ explicitly forwent making any findings on the Lozada factors. Wan

_____

[6] After we raised the potential exhaustion issue here, the government told us that it is "generally not [the Attorney General's] position that claims of Board error must be exhausted in motions to reconsider." Pressed at oral argument to tell us whether the government thought Wan was incorrectly decided, the government declined to take a position.

- 16 -

J.A. at 191 n.7. Nor did the IJ even discuss the ineffective-assistance claim. It was in that narrow circumstance that the BIA's appellate factfinding spawned something wholly new, and we thus said Wan had to raise his argument to the BIA in a motion to reconsider in order to satisfy the exhaustion requirement. See Wan, 776 F.3d at 57.

Here, though, Barros claims only that the BIA mis-applied a legal standard it was bound to apply in deciding his appeal. That is, the IJ here made findings of fact, and Barros says the BIA failed to review those facts only for clear error as the regulations require. Though we are bound by Wan's precise holding, we are not bound to expand its reach. See United States v. Serrano-Delgado, 29 F.4th 16, 25 (1st Cir. 2022).

Nor do we see good reason to expand Wan's reach. To our knowledge, we have not required a petitioner to file a motion to reconsider in order to exhaust a claim that the BIA misapplied a legal standard. Rather, we have often considered petitions for review challenging the BIA's failure to apply binding statutes, regulations, or precedent without ever mentioning a requirement that a motion to reconsider be filed. See, e.g., Tacuri-Tacuri, 998 F.3d at 470-72 (raising no exhaustion issue, notwithstanding lack of motion to reconsider, as to claim that the BIA applied the incorrect substantive legal standard); Rosales Justo v. Sessions, 895 F.3d 154, 162 (1st Cir. 2018) (same). In our view, the BIA's

- 17 -

failure to apply clear-error review to the IJ's record findings is no different than the BIA's failure to apply a binding substantive legal standard. And, if that wasn't enough, we have even exercised jurisdiction over a claim that the BIA improperly applied clear-error as opposed to de novo review where the petitioner did not file any motion to reconsider with the BIA prior to petitioning for our review -- again, without addressing exhaustion. See DeCarvalho v. Garland, 18 F.4th 66, 69, 73-74 (1st Cir. 2021); see also Samayoa Cabrera v. Barr, 939 F.3d 379, 382-84 (1st Cir. 2019) (reviewing whether BIA properly applied clear-error review where no motion to reconsider was filed, while also finding another issue unexhausted); Rosales Justo, 895 F.3d at 165-66.[7]

We thus conclude that Barros did not, under Wan, need to file a motion to reconsider with the BIA in order to exhaust his claim that it violated clear-error review in deciding his appeal.

## II. Merits

We turn now to Barros's claim of BIA error. Barros claims the BIA failed to apply clear-error review to the IJ's

---

[7] Some of our sister circuits have similarly addressed claims that the BIA misapplied the standard of review in cases where the courts did not mention that any motion to reconsider was filed or ruled upon by the BIA, also without mentioning a potential exhaustion issue. See, e.g., Cruz-Quintanilla v. Whitaker, 914 F.3d 884, 888 n.1, 889 (4th Cir. 2019) (addressing claim of improper standard of review without applying exhaustion threshold, yet also finding another issue unexhausted); Mendoza-Ordonez v. Att'y Gen. of the U.S., 869 F.3d 164, 169 (3d Cir. 2017); Padmore v. Holder, 609 F.3d 62, 68 (2d Cir. 2010).

finding that Barros's removal, on top of the recent loss of Barros's mother, "is extreme hardship to [Barros]'s father." In detailing this factor, the BIA stated that "some family members, particularly [Barros's] father, may suffer some hardship." According to Barros, the BIA's characterization of this fact changed it from a finding that hardship <u>would</u> occur to a finding that hardship <u>might</u> occur. Naturally, the government disagrees. According to the government, the BIA simply used a different lexicon to describe this factor in order to explain why it gave different discretionary weight to this factor.[8]

We agree with Barros. To be sure, the "BIA is not bound simply to parrot the precise language used by the IJ [and] may use its own vocabulary." <u>Chen</u>, 703 F.3d at 23. But language matters. And, as we've said recently, "the line between factfinding and the BIA's application of discretionary weight to undisputed record facts" -- or facts found by the IJ -- "is fine." <u>Adeyanju</u>, 27 F.4th at 44.

---

[8] At oral argument, Barros also argued that the BIA violated clear-error review when it concluded that his criminal behavior was due "largely" to his drug addiction. We won't reach that here because "arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived" "except in extraordinary circumstances" -- which Barros did not try to present. <u>Conduragis</u> v. <u>Prospect Chartercare, LLC</u>, 909 F.3d 516, 518 n.2 (1st Cir. 2018) (quoting <u>United States</u> v. <u>Pulido</u>, 566 F.3d 52, 60 n.4 (1st Cir. 2009)).

Here, the language the BIA used changed the nature of the IJ's predictive finding on hardship. Implicit in the BIA's conclusion that the family members only "may suffer some hardship" is the question of whether that hardship might actually be experienced. Indeed, DHS implicitly took on the IJ's finding of hardship in its brief to the BIA. As DHS put it: "[O]ne cannot help but question the hardship resulting from the removal of a family member who, as in this case, spent years assaulting and fighting with his family members, badgering them for money for drugs, and destroying their property." The IJ, though, considered this evidence but still concluded that Barros's potential removal "is extreme hardship" to Barros's father.

The government also argues that the existence of the hardship here is not a factual finding, but merely a factor the IJ and BIA can consider in the discretionary analysis. That argument conflates two separate questions: whether a fact exists, and what weight that fact should garner in the discretionary analysis.

"[F]or the purposes of BIA review, the IJ's 'predictive findings of what may or may not occur in the future are findings of fact . . . subject to a clearly erroneous standard of review.'" Samayoa Cabrera, 939 F.3d at 382 (quoting Matter of Z-Z-O-, 26 I. & N. Dec. 586, 590 (BIA 2015)). It is "the question of whether those predicted events, insofar as they occur, 'meet the legal requirements for relief from removal' [that] is reviewed de novo."

Id. at 382-83 (quoting Matter of Z-Z-O-, 26 I. & N. Dec. at 591); see also DeCarvalho, 18 F.4th at 73; Kaplun v. Att'y Gen. of the U.S., 602 F.3d 260, 271 (3d Cir. 2010) ("While looking at the hardship necessarily involves ascertaining the future factual consequences that would result from removal of the [immigrant], it is the degree of hardship that constitutes a legal question, namely, whether it is 'exceptional and extremely unusual.'" (quoting BIA Reforms, 67 Fed. Reg. at 54890)).

The rulemaking accompanying the regulation enacting the BIA's standards of review makes this clear, too. In the context of the statutory requirement of "exceptional and extremely unusual hardship" under different provisions for cancellation of removal, the rulemaking explains:

> [T]hose facts that a respondent claims make up "exceptional and extremely unusual hardship" to a respondent's putative qualifying relative . . . , and whether the putative qualifying relative is actually a qualifying relative, will be reviewed by the Board only to determine if the immigration judge's determination was clearly erroneous. Whether those facts, as determined by the immigration judge and found not to be clearly erroneous, amount to "exceptional and extremely unusual hardship" under the Act may be reviewed by the Board de novo.

BIA Reforms, 67 Fed. Reg. at 54890.[9] Similarly, the rulemaking draws the same distinction for discretionary determinations,

---

[9] It is important to remember that the specific form of cancellation of removal for which Barros applied did not require

- 21 -

noting that de novo review applies to the discretionary weight applied to the underlying facts as found by the IJ, with those underlying facts reviewed only for clear error.  Id.

Indeed, many of the factors considered under Matter of C-V-T- include the application of discretionary weight to findings of fact.  For example, the IJ and BIA consider "family ties within the United States, residence of long duration in this country, . . . [and] service in this country's armed forces."  22 I. & N. Dec. at 11.  Yet whether Barros has family in the United States is surely a factual finding.  As are the questions of how long he has resided here and whether he served in the U.S. Armed Forces.  It is when those raw facts -- reviewed for clear error -- are plugged into the discretionary calculus that the BIA may choose to give more or less weight to these factors.  And so it is too with the factor at issue here, the likelihood that Barros's removal would

---

him to establish the statutory requirement of exceptional or extreme hardship, as other forms of cancellation of removal do. Compare 8 U.S.C. § 1229b(a) (Barros's form), with id. § 1229b(b)(1)(D) (cancellation for nonpermanent residents, requiring a showing that "removal would result in exceptional and extremely unusual hardship to the [immigrant]'s spouse, parent, or child," if the relative is a U.S. citizen or lawful permanent resident), and id. § 1229b(b)(2)(A)(v) (cancellation for battered spouses or children, which requires showing that "removal would result in extreme hardship to the [immigrant], the [immigrant]'s child, or the [immigrant]'s parent").  In those circumstances, we have no jurisdiction to review the weighing involved in the BIA's conclusion about whether the hardship is exceptional or extreme. Tacuri-Tacuri, 998 F.3d at 471; Alvarado, 743 F.3d at 275.

harm his family, particularly his father -- that is, the likelihood the removal would cause hardship.

Thus, the BIA here could not have changed the IJ's factual finding (from a finding that Barros's removal "is" hardship, or would cause harm, to his father to one that it "may" be hardship, or only may cause harm) without applying clear-error review. And the BIA's decision makes no attempt to explain why the IJ's predictive finding "stinks like a 5 week old, unrefrigerated, dead fish." Adeyanju, 27 F.4th at 33 (quoting Baptiste, 8 F.4th at 42).

To be clear, we do not address the relative weight the BIA applied to the hardship in the discretionary analysis. The BIA could have given less weight to the IJ's finding that Barros's father would suffer hardship. In exercising its discretion, it could have discounted the extent of the hardship given other facts found by the IJ, including Barros's history of violence towards family members. But what the BIA could not do was change the raw factual finding by the IJ -- that Barros's removal "is" hardship to his father -- without applying clear-error review.

### Wrapping Up

For the reasons we just explained, we **grant** Barros's petition for review and **remand** for further proceedings consistent with this opinion.

- 23 -