# United States Court of Appeals
## For the First Circuit

No. 21-1029

JEREMIAS LUCAS DOMINGO-MENDEZ,

Petitioner,

v.

MERRICK B. GARLAND,[*] Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Michael B. Kaplan, with Jeffrey B. Rubin, Todd C. Pomerleau, Kimberly A. Williams, and Rubin Pomerleau PC were on brief for petitioner.

Brendan P. Hogan, Office of Immigration Litigation, with whom Brian Boynton, Acting Assistant Attorney General, Civil Division, and Andrew N. O'Malley, Senior Litigation Counsel, were on brief for respondent.

August 31, 2022

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Acting Attorney General Jeffrey Rosen.

**KAYATTA**, <u>Circuit Judge</u>.  A parent's removal from the United States creates foreseeable and substantial hardship for a family.  In the face of that reality, Congress has nevertheless decreed that, with possible exceptions not applicable here, the Attorney General may rely on that hardship to cancel a nonpermanent resident's removal only if the removal would cause "exceptional and extremely unusual hardship" for a qualifying family member.  8 U.S.C. § 1229b(b)(1).  The case before us illustrates the consequences of that stringent statutory requirement.

Petitioner Jeremias Lucas Domingo-Mendez is a native and citizen of Guatemala who conceded that he was removable from the United States.  After an immigration judge ("IJ") granted his application for cancellation of removal, the Board of Immigration Appeals ("BIA" or "Board") vacated that relief and ordered Domingo-Mendez removed.  Domingo-Mendez argues that, in so doing, the BIA committed reversible legal error.  For the following reasons, we disagree.

## I.

Domingo-Mendez entered the United States without inspection around March of 2009 and has remained in this country since that time.  He and his partner, Celia Mazariegos, have two U.S.-citizen children under the age of 10.  Domingo-Mendez's request for cancellation of removal was predicated on the impact his removal would have on his young children.

Cancellation of removal is a discretionary form of relief that is available, as relevant here, when an eligible noncitizen's "removal would result in exceptional and extremely unusual hardship to" his United States citizen or permanent resident child. 8 U.S.C. § 1229b(b)(1)(D). In addition to showing the requisite hardship, the noncitizen must have been continuously present in the United States for at least ten years; must have "been a person of good moral character during [that] period"; and must not have been convicted of certain offenses. Id. §§ 1229b(b)(1)(A)-(C).

An IJ held a hearing on Domingo-Mendez's application for cancellation of removal on June 8, 2020. The government argued that Domingo-Mendez had not demonstrated that his U.S.-citizen children would suffer "exceptional and extremely unusual hardship" as required by statute.[1] 8 U.S.C. § 1229b(b)(1)(D).

One question discussed several times throughout the hearing was what kind of work Domingo-Mendez -- who had been a cook in the United States -- could procure in Guatemala. Government counsel asked Domingo-Mendez whether he "could work as a chef in Guatemala." Domingo-Mendez initially responded that he

---

[1] The government also contended that Domingo-Mendez had not demonstrated the requisite physical presence and good moral character to qualify for cancellation of removal. The IJ disagreed. The BIA did not reach either issue, and we do not discuss them further.

- 3 -

could not work as a chef, but after some apparent confusion about the pending question, the following exchange took place:

> JUDGE TO [GOVERNMENT COUNSEL] MR. CZUGH
>
>> Is the question, if he goes back to Guatemala now, why couldn't he work as a chef?
>
> MR. CZUGH to JUDGE
>
>> Correct.
>
> MR. DOMINGO TO MR. CZUGH
>
>> Oh, yes.  I, I could find work in a restaurant.
>
> JUDGE TO MR. DOMINGO
>
>> So, could you find work in a restaurant today in Guatemala?
>
> MR. DOMINGO TO JUDGE
>
>> Yes, yes.  I think so.

Later, Domingo-Mendez's counsel again steered his testimony towards the subject of work:

> MR. GALLO TO MR. DOMINGO
>
>> Mr. Domingo-Mendez, do you know the difference between a chef and a cook?
>
> MR. DOMINGO TO MR. GALLO
>
>> Yes.
>
> MR. GALLO TO MR. DOMINGO
>
>> Okay.  In the United States, are you a chef, or you're a -- or are you a cook?

MR. DOMINGO TO MR. GALLO

  A cook.

MR. GALLO TO MR. DOMINGO

  Okay.  And because you're a cook in the
  United States, could you then be a chef
  in Guatemala?

MR. DOMINGO TO MR. GALLO

  Perhaps.

MR. GALLO TO MR. DOMINGO

  Okay. You said you were planting crops in
  Guatemala before you came to the United
  States.  Is that correct?

MR. DOMINGO TO MR. GALLO

  Yes.

MR. GALLO TO MR. DOMINGO

  Do you know whether or not you would be
  able   to   support   Celia,   [and   the
  children], planting crops in Guatemala?

MR. DOMINGO TO MR. GALLO

  Yes.  Well, I can there in a restaurant.

MR. GALLO TO MR. DOMINGO

  Would you make the same amount of money
  in Guatemala, as you do in the United
  States, working in a restaurant?

MR. DOMINGO TO MR. GALLO

  No.

Finally, this exchange took place:

JUDGE TO MR. DOMINGO

> And, if you went back to Guatemala, where
> would you live?

MR. DOMINGO TO JUDGE

> Over there, because I have my own house.

JUDGE TO MR. DOMINGO

> And are there restaurants in that area?

MR. DOMINGO TO JUDGE

> No.

JUDGE TO MR. DOMINGO

> Then how could you work as a cook, if you
> lived in that area?

MR. DOMINGO TO JUDGE

> In the, in the place where I live, 30
> minutes or half an hour away, there are
> restaurants.

When Domingo-Mendez's partner, Mazariegos, took the stand, the IJ asked her about the foregoing testimony as follows:

JUDGE TO MS. MAZARIEGOS

> Now, he testified that he thought he
> could work as a cook in Guatemala. Do
> you, do you know -- what do you think of
> that?

MS. MAZARIEGOS TO JUDGE

> Well, I don't, I don't think they would
> have the opportunity, because over here
> -- over there, at 25 years old, they
> don't hire you. You have to be 20 or 25

in order to be worth -- to, to -- in order
to go to work, and now he's 32 years old.

In her subsequent decision, the IJ summarized the testimony on Domingo-Mendez's work prospects in Guatemala as follows:

> The respondent and Celia worry that if he has to go back to Guatemala, that it will not be possible for him to support the children in rural Guatemala, where both of them testified that for the most part the available work is subsistence agricultural work. The respondent testified that he might be able to work as a cook in a town some distance away from his home town, but he never worked as a cook in Guatemala before. And Celia explained that she believes it would be very difficult for him to find work as a cook, given his age, given that he has not worked in this capacity in Guatemala before, and given the fact that the restaurants are not closely located to the areas where their families live in Guatemala today.

The IJ ultimately made no explicit finding as to whether Domingo-Mendez would find work as a cook or other restaurant work in Guatemala. Rather, she turned to discussing the "Coronavirus pandemic" and testimony that travel restrictions would cause a protracted separation of Domingo-Mendez from his two young children (then ages 5 and 6). The IJ suggested that, if Domingo-Mendez was removed, Mazariegos and the children faced two options: (1) move to Guatemala, "subject[ing]" the children to "a life of harsh rural poverty," or (2) stay behind in the United States and lose the presence of their father, "the mainstay of th[e] family."

The IJ found that Domingo-Mendez's "presence here in the United States [was] an absolute necessity for the safety, security and future well-being of [his] two United States citizen children." "[F]or this reason," she found that Domingo-Mendez "met his burden of proof to show that [his children] would suffer exceptional and extremely unusual hardship if he was deported to Guatemala."

The BIA's judgment was otherwise. The Board began by explaining that it reviewed the IJ's factual findings for clear error. The BIA did not claim to find any clear error in the IJ's factfinding. It focused instead on the IJ's ultimate judgment that Domingo-Mendez had established the requisite extreme hardship. It concluded as follows:

> If the respondent's children do accompany him to Guatemala, the poor economic conditions, reduced educational opportunities, and adjustment difficulties, considered cumulatively, are not sufficient to establish the requisite hardship standard under the governing case law. If his children remain in the United States, the likely diminution in their economic circumstances and emotional hardship created by their father's absence similarly do not rise to the statutorily mandated level of exceptional and extremely unusual. See Matter of J-J-G-, 27 I&N Dec. 808 (BIA 2020); [Matter of] Recinas, 23 I&N Dec. 467 (BIA 2002); Matter of Andazola, 23 I&N Dec. 319 (BIA 2002); Matter of Monreal, 23 I&N Dec. 56 (BIA 2001). We therefore disagree with and reverse the Immigration Judge's conclusion that the hardships presented are sufficient to satisfy the applicable standard.

- 8 -

In so concluding, the BIA recited some but by no means all of the evidence. In particular, it stated as follows:

> The respondent's employment history includes working as a cook, and he believes he would be able to obtain restaurant work in Guatemala. The respondent indicated that his parents still live in Guatemala, and he has his own house there (IJ at 6; Tr. at 109, 121-122).

This petition for review followed.

## II.

Domingo-Mendez argues that the BIA committed legal error by (1) failing to state whether it accepted the IJ's factual findings or rejected them as clearly erroneous; (2) engaging in its own factfinding; and (3) failing to consider "certain key facts" cited by the IJ. Assuming that we have jurisdiction to entertain these arguments,[2] we find them to be unavailing. Our reasoning follows.

---

[2] As a general rule, we lack jurisdiction to review the BIA's "judgment regarding the granting of relief under section . . . 1229b" (among others), 8 U.S.C. § 1252(a)(2)(B), but we retain jurisdiction to decide "constitutional claims or questions of law," id. § 1252(a)(2)(D). After argument in this case, the Supreme Court construed section 1252(a)(2)(B) to preclude federal courts from entertaining the argument "that any reasonable judge would have been 'compelled'" to reach a particular factual conclusion. Patel v. Garland, 142 S. Ct. 1614, 1620, 1627 (2022). Ultimately, we need not determine whether all of Domingo-Mendez's claims involve legal error or decide whether and to what extent Patel would preclude us from reviewing those claims. The government does not suggest that Patel divests of us jurisdiction over Domingo-Mendez's appeal. And, in any event, where our "statutory jurisdiction is ambiguous but the merits are straightforward, we [may] bypass the jurisdictional issue and

**A.**

We begin by dispensing with Domingo-Mendez's claim that after the BIA identified the proper standard governing its review of the facts found below, it was obliged to explicitly indicate whether it accepted those findings. The BIA cited the correct standard. See 8 C.F.R. § 1003.1(d)(3)(i) (2020).[3] We do not read the governing regulation (which instructs the BIA to review the IJ's factual findings "only to determine whether [those findings] are clearly erroneous") to require the kind of explicit statement Domingo-Mendez desires. Id. And -- as we discuss more fully below -- the Board's decision does not indicate that it applied a different standard sub silentio. See Samayoa Cabrera v. Barr, 939 F.3d 379, 383 (1st Cir. 2019) (rejecting petitioner's contention that the BIA applied the wrong standard of review even though the agency did "not explicitly spell out the standard of review it applied" absent evidence the agency applied the wrong standard); Enwonwu v. Gonzales, 232 F. App'x 11, 15 (1st Cir. 2007) (per

explain why" Domingo-Mendez's claims fail on the merits. Tacuri-Tacuri v. Garland, 998 F.3d 466, 472 (1st Cir. 2021).

[3] The government filed its appeal with the BIA on July 7, 2020. The BIA's review was governed by the version of 8 C.F.R. § 1003.1 effective at that time. See Barros v. Garland, 31 F.4th 51, 57 n.2 (1st Cir. 2022). References to this regulation are to that version.

curiam) ("presumption of regularity . . . attaches to the BIA's official acts").

## B.

Domingo-Mendez's better, but still unsuccessful, claim is that the BIA impermissibly engaged in its own factfinding by ascribing a higher degree of likelihood to his ability to obtain restaurant work in Guatemala than did the IJ. With a caveat not at issue here, the BIA may "not engage in factfinding in the course of deciding appeals." 8 C.F.R. § 1003.1(d)(3)(iv). See Barros v. Garland, 31 F.4th 51, 63 (1st Cir. 2022) ("For the purposes of BIA review, the IJ's predictive findings of what may or may not occur in the future are findings of fact subject to a clearly erroneous standard of review." (cleaned up) (quoting Samayoa Cabrera, 939 F.3d at 382)).

According to the IJ, Domingo-Mendez "testified that he might be able to work as a cook in a town some distance away from his home town." (Emphasis added.) The BIA described the testimony slightly differently, saying that Domingo-Mendez "believes he would be able to obtain restaurant work in Guatemala." (Emphasis added.) So the question is whether this difference in the two descriptions of the testimony warrants setting aside the BIA's ruling. For the following reasons, we conclude that it does not.

First, the descriptions of the IJ and the BIA do not directly conflict. The IJ said that Domingo-Mendez "testified

- 11 -

that he might be able to work as a cook," while the BIA said that Domingo-Mendez "believes he would be able to obtain restaurant work." The BIA could certainly presume that "restaurant work" includes work as a cook, and could also encompass restaurant jobs other than a job as a cook. So this is not a case where the words used by the IJ and BIA clash in a manner that suggests that the BIA rejected any factfinding by the IJ. Indeed, it seems clear that the BIA thought its description of the testimony was consistent with the IJ's: To support the proposition that Domingo-Mendez "believes he would be able to obtain restaurant work," the BIA cited to <u>both</u> the transcript of Domingo-Mendez's hearing testimony <u>and</u> the relevant page of the IJ's decision.

Second, the record shows that the BIA's description of the testimony did not overstate what Domingo-Mendez said -- Domingo-Mendez did testify that he "could find work in a restaurant" in Guatemala. So if there were indeed a meaningful difference between the IJ's description and that of the BIA, it is the IJ's that would have been clearly erroneous. And the BIA certainly need not adopt a clearly incorrect recitation of the record. <u>See</u> 8 C.F.R. § 1003.1(d)(3)(i).

Third, it does not appear that any difference in the descriptions of the testimony was material. Neither the IJ nor the BIA rested the ultimate hardship determination on the rather nuanced difference in describing what Domingo-Mendez thought about

his ability to obtain restaurant work in Guatemala. Nor did either rely on the testimony to make a predictive finding. Rather, the IJ found the requisite hardship without pinning down the precise likelihood that Domingo-Mendez would find work as a cook. The IJ's hardship determination rested on her conclusion that Domingo-Mendez's "presence here in the United States is an absolute necessity for the safety, security and future well-being of [his] two United States citizen children." Likewise, the BIA did not suggest that Domingo-Mendez had promising job prospects in Guatemala that precluded a hardship finding. To the contrary, the Board concluded that if his children accompanied him to Guatemala, "the poor economic conditions, reduced educational opportunities, and adjustment difficulties, considered cumulatively, are not sufficient to establish the requisite hardship standard under the governing caselaw." And if the children remained in the United States, the Board said, "the likely diminution in their economic circumstances and emotional hardship created by their father's absence similarly do not rise to the statutorily mandated level of exceptional and extremely unusual." In short, neither the IJ's nor the BIA's bottom-line hardship determination rested on whether Domingo-Mendez thought he could obtain restaurant work in Guatemala. Thus, even if there was an error in the BIA's description of Domingo-Mendez's testimony, it was harmless. See Guta-Tolossa v. Holder, 674 F.3d 57, 60 n.2 (1st Cir. 2012)

(explaining that although "[t]he IJ seem[ed] to have misread" certain evidence, the error was harmless because the IJ's decision was not based on that evidence).

## C.

We close with Domingo-Mendez's argument that the BIA committed legal error when it failed to discuss certain "key facts cited by the IJ in her decision." In particular, Domingo-Mendez says that the BIA did not mention (1) that Mazariegos and the children were already suffering acute financial hardship while Domingo-Mendez was detained; and (2) the "effectively . . . permanent physical separation" of Domingo-Mendez from his children that would result from the combination of the family's financial circumstances and COVID-19-related travel restrictions if Domingo-Mendez were removed.

Although "the BIA is required to consider all relevant evidence in the record," Lin v. Mukasey, 521 F.3d 22, 28 (1st Cir. 2008), "each piece of evidence need not be discussed in a [BIA] decision," Chen v. Holder, 675 F.3d 100, 106 (1st Cir. 2012) (alteration in original) (quoting Morales v. I.N.S., 208 F.3d 323, 328 (1st Cir. 2000)). "When the BIA's decision is neither inconsistent with [the evidence at issue] nor gives reason to believe the BIA was unaware of it, we have no reason to doubt that the agency considered the evidence." Lin, 521 F.3d at 28.

As we have explained, the BIA acknowledged that, should Domingo-Mendez be removed and his children stay behind, the children would experience a "likely diminution in their economic circumstances" and "emotional hardship created by their father's absence." Similarly, the BIA determined that even if the children joined their father in Guatemala, "the poor economic conditions" considered collectively with other circumstances did not establish the requisite hardship. So "[w]e see no reason to surmise that the BIA overlooked" the evidence in question. Lin, 521 F.3d at 28. Rather, pointing to what many may regard as a hard-hearted statutory mandate, it disagreed with the IJ that the family's real hardship rose to the level of the requisite "exceptional and extremely unusual hardship" that the statute requires. 8 U.S.C. § 1229b(b)(1)(D).

In sum, Domingo-Mendez has not shown that the BIA misconstrued or overlooked relevant evidence. Nor does the record support any contention that the BIA applied an improper standard.

Without indication that the BIA misconstrued or overlooked relevant evidence, we cannot remand for the Board to undertake the hardship analysis afresh.

## III.

For the foregoing reasons, we deny Domingo-Mendez's petition and affirm the BIA's ruling.

- 15 -