# United States Court of Appeals
## For the First Circuit

No. 21-1237

FELIX MORENO,

Petitioner,

v.

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Lipez and Gelpí, Circuit Judges.

Randy Olen for petitioner.
Jessica R. Lesnau, Office of Immigration Litigation, Civil
Division, United States Department of Justice, with whom Brian M.
Boynton, Assistant Attorney General, and Anna Juarez, Senior
Litigation Counsel, Office of Immigration Litigation, were on
brief, for respondent.

October 14, 2022

**GELPÍ, Circuit Judge.** Petitioner Felix Moreno ("Moreno" or "Petitioner") seeks review of a final removal order upheld by the Board of Immigration Appeals ("BIA"). He sought adjustment of status under 8 U.S.C. § 1255(a), which the Immigration Judge ("IJ") denied. He then appealed the denial of his status adjustment application to the BIA, while also moving to remand based on new evidence. The BIA dismissed Moreno's appeal and denied his motion to remand. Petitioner contends before us that the BIA committed legal error and abused its discretion in failing to adequately address new evidence. We deny Moreno's petition for review.

## I. BACKGROUND

### A. MORENO'S ENTRY AND IMMIGRATION STATUS

Moreno, a 54-year-old native and citizen of Cape Verde, entered the United States on April 11, 1989, with a B-2 visitor visa with authorization to stay until June 1, 1989, under former section 101(a)(15) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 101(a)(15).

In 2015, his U.S.-citizen son, Felix Samedo Sequeira Jr., petitioned for an I-130 immigrant visa,[1] available to immediate relatives of U.S. citizens, on Moreno's behalf. This was a necessary step for Moreno to become eligible for adjustment

---

[1] An I-130 petition allows a U.S. citizen or lawful permanent resident to sponsor an alien relative's application for permanent resident status.

of status.  The I-130 immigrant visa was approved by U.S. Citizenship and Immigration Services on May 6, 2019.

### B. MORENO'S INITIAL REMOVAL PROCEEDINGS

In 1995, the Immigration and Naturalization Service ("INS") initiated removal proceedings charging Moreno with overstaying his visa by remaining in the United States for a time longer than permitted after being admitted as a nonimmigrant visitor, and thus, he was subject to removal under former INA section 241(a)(1)(B).[2]  At the initial hearing held on June 7, 1995, Moreno denied the factual allegations, contested the charges of removability, and declined to designate a country of removal. However, the IJ designated Cape Verde as the country of removal. In lieu of deportation, Moreno sought voluntary departure.  At a continued hearing held on December 29, 1995, Petitioner was found removable and was granted voluntary departure to take place by April 29, 1996.

On April 30, 1996, Moreno filed a motion to reopen seeking suspension of deportation.[3]  At a hearing held on March

---

[2] Moreno was also charged with seeking to procure entry into the United States via fraud or misrepresentation under section 212(a)(6)(C)(i) of the INA.  This ground was later withdrawn.

[3] Suspension of deportation was the predecessor to the current, and more limited, relief of cancellation of removal. See Cortez-Felipe v. INS, 245 F.3d 1054, 1056 (9th Cir. 2001) (noting that on April 1, 1997, section 304(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 repealed

- 3 -

12, 1997, the IJ pretermitted Moreno's application for suspension of deportation because the IJ determined that he had not demonstrated eligibility for such relief. Instead, Moreno was granted voluntary departure for a second time. That decision was appealed to the BIA. On November 16, 2001, the BIA administratively closed the case, finding that, at that time, Moreno may have been eligible for cancellation of removal under section 240A(b).

### C.  MORENO'S CRIMINAL HISTORY

Moreno had multiple run-ins with the law, accruing a lengthy and serious criminal history. Among these incidents, four involved drunk driving. In 1996, Moreno was arrested for operating under the influence of alcohol ("OUI") and a marked lanes violation. Moreno was sentenced to probation. In 2003, Moreno was convicted of OUI and sentenced to a fourteen-day inpatient treatment program, forty hours of community service, a bar program, and suspension of his driver's license for two years. In 2009, he was again arrested for a marked lanes violation, OUI, and negligent operation of a motor vehicle. After a bench trial, he was found not guilty of the OUI and guilty as to the other charges. Moreno was placed on probation, ordered to attend a highway safety

_____

suspension of deportation and replaced it with cancellation relief).

- 4 -

program, and ordered to thirty days' home confinement and to refrain from using alcohol or drugs.

In 2016, Moreno was again arrested for OUI when his vehicle collided with another vehicle while his minor daughter was on board. He was charged with third offense OUI and child endangerment while OUI. He went to trial and was found guilty by a jury on both charges. On October 3, 2018, he was sentenced to ninety days' imprisonment for the child endangerment while OUI violation and two-and-a-half years for the OUI charge.

On or about December 5, 2018, after serving his state criminal sentence, Moreno was transferred to the custody of U.S. Immigration and Customs Enforcement.

### D. REINSTATEMENT OF REMOVAL PROCEEDINGS AGAINST MORENO

On December 14, 2018, the U.S. Department of Homeland Security ("DHS") moved to reinstate proceedings before the BIA. The BIA granted the DHS's motion. Accordingly, the BIA vacated its November 2001 order administratively closing the case and reinstated proceedings, remanding the case for further proceedings.

#### 1) PROCEEDINGS BEFORE THE IJ

In early 2020, Petitioner appeared at his merits hearing solely seeking relief under former section 245(a) of the INA, 8

U.S.C. § 1255(a)[4], for adjustment of status through his U.S.-citizen son. The IJ concluded that he was statutorily eligible for adjustment and proceeded to address the merits of such discretionary relief.

The IJ at the outset noted that "[Moreno]'s lengthy and serious criminal history" weighed against a favorable exercise of discretion. The IJ pointed to Moreno's numerous arrests and convictions for driving under the influence, including the one in 2016, in which he hit another vehicle while his minor daughter was on board.

The IJ further considered that Petitioner: 1) completed an alcohol program in jail; 2) claimed to have quit consuming alcohol after the 2016 incident; 3) vowed not to drive without a license; 4) stated he would attend Alcoholics Anonymous meetings if given the chance; 5) noted that his family fully supported his recovery; and 6) stated that he had a job waiting and a plan to get to and from work. The IJ, however, was troubled because Petitioner admitted to drinking when stressed but "[h]e could articulate no coping mechanisms or specific plans for what he will do when he becomes worried or stressed again and wants to drink."

---

[4] Section 1255(a) provides, in relevant part: "The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . ."

The IJ moreover highlighted Moreno's lack of candor when asked if there had been occasions when he had driven drunk without getting caught. He initially denied ever having done so but eventually admitted he had done so "on two, three, or four other occasions."

The IJ also took into account Moreno's extenuating circumstances: 1) he had lived in the United States for over thirty years; 2) he has three U.S.-citizen children, then-aged twenty-five, thirteen, and five; 3) he had been employed by the same employer for twenty-five years, who indicated that he is "a dependable and hard worker"; 4) he had sporadically paid taxes; 5) his life-partner and mother of two of his children, Carmen Lafleur ("Lafleur") "has a number of health problems including Type 2 diabetes, carpal tunnel syndrome, severe obesity, neuropathy, a mood disorder, and memory loss"; 6) Moreno's detention "ha[d] been devastating" to his life-partner and family, with her having to shoulder the full load in terms of familial and financial obligations; 7) his twenty-five-year-old son, who suffers from "'poorly controlled' Type 1 diabetes" and other health issues and has been unemployed, considers Moreno "his role model and best friend"; 8) his absence would be financially and emotionally deleterious for the family; 9) the mother of Petitioner's other child called Petitioner a "devoted father who always paid child support before being incarcerated" and who used to spend "weekends and some weekdays" with his thirteen-year-old

child, who has been seeing a psychologist to deal with emotional problems as a result of his father's absence.

The IJ ultimately weighed all of the evidence, noting that "[b]ecause of [Petitioner's] significant criminal history, he needed to present unusual or outstanding countervailing equities to merit a favorable exercise of discretion" and that "[t]he positive equities in this case simply cannot outweigh the adverse factors."  In doing so, the IJ afforded heavier weight to Moreno's multiple drunk-driving arrests in which he repeatedly failed sobriety tests, including that with his minor daughter as a passenger, in comparison to his extenuating circumstances.  The IJ also gave adverse weight to Petitioner's lack of candor regarding other incidents of drunk driving and his lack of a concrete plan to fight the urge to drink in the future.  Ultimately, the IJ denied Moreno's application for adjustment of status.

### 2) APPEAL TO THE BIA

Petitioner appealed to the BIA, which, in turn, thoroughly reviewed, recited, and agreed with the IJ's balancing of factors.  The BIA specifically commented that Petitioner "ha[d] not persuasively presented evidence of genuine rehabilitation" and that he "could not articulate his plan for rehabilitation with specificity, aside from reading a book or spending time with his child."

Next, the BIA addressed Petitioner's motion to remand the matter to the IJ so that he might present new, previously unavailable evidence that his life-partner had been diagnosed with a low-grade astrocytoma -- a form of brain cancer -- and was undergoing treatment. The BIA held that it "do[es] not consider new evidence on appeal" and that, even if it did, petitioner had not shown that the new "evidence would likely change the result in the case, especially in light of the seriousness of his criminal history and dangerous behavior." The BIA cited to agency precedent "providing that a motion to remand for the purpose of presenting additional evidence must conform to the same standards as a motion to reopen and will only be granted if the evidence was previously unavailable, material, and new evidence that would likely change the result of the case." See Matter of Coelho, 20 I. & N. Dec. 464, 471-72 (BIA 1992).

## II. DISCUSSION

### A. ADJUSTMENT OF STATUS

As a general principle, this court lacks jurisdiction to review the BIA's discretionary denial of Petitioner's application for adjustment of his immigration status. 8 U.S.C. § 1252(a)(2)(B); see Mele v. Lynch, 798 F.3d 30, 31-32 (1st Cir. 2015); DaCosta v. Gonzales, 449 F.3d 45, 49 (1st Cir. 2006). As we have recognized for some time, an exception lies "where the petition raises claims premised on constitutional claims or

questions of law." Jaquez v. Holder, 758 F.3d 434, 435 (1st Cir. 2014) (citing 8 U.S.C. § 1252(a)(2)(D)). However, we have explained that "[i]n determining whether a petitioner has raised a colorable constitutional claim or question of law, substance must triumph over form." Ramirez-Matías v. Holder, 778 F.3d 322, 326 (1st Cir. 2015). "An alien cannot 'transform an unreviewable issue of fact into a reviewable issue of law' by the simple expedient of cloaking what is essentially a factual claim in the raiment of constitutional or legal error." Id. (quoting Alvarado v. Holder, 743 F.3d 271, 275 (1st Cir. 2014)). Simply put, "we must look to the meat of the petitioner's arguments, not to the packaging in which they are wrapped." Id. (citing Ayeni v. Holder, 617 F.3d 67, 70-71 (1st Cir. 2010)).

Petitioner acknowledges that this court lacks jurisdiction to review the way that the BIA exercised its discretion in denying his adjustment of status application. He also does not contend that we have jurisdiction to review whether there is enough support in the record for a finding of fact on which that exercise of discretion depends. However, Moreno argues that the BIA "both ignored important facts in the record, and clearly mischaracterized others" and that the IJ and BIA's failure to properly consider evidence constitutes a question of law that confers jurisdiction for us to review. We disagree with Petitioner.

- 10 -

Insofar as Moreno's contention is that the BIA ignored evidence in the record or mischaracterized factual findings by the IJ in affirming the IJ's ruling, and that it is an error of law for the BIA to have proceeded in that way, see Domingo-Mendez v. Garland, 47 F.4th 51, 56 (1st Cir. 2022), we see no basis for overturning the BIA's ruling. A review of the BIA's opinion reveals that it did consider the evidence that Moreno contends that it ignored and that it did not purport to be deciding the matter based on any facts other than those found by the IJ. Thus, even assuming that there is no jurisdictional bar to Moreno's contention, his challenge fails. See id. And, insofar as Moreno is merely taking issue with the sufficiency of record support for the facts on which the BIA relied in ruling as it did, the challenge is not one that we may consider. See Patel v. Garland, 142 S. Ct. 1614, 1627 (2022).

In particular, Moreno contends that the IJ erred by "rely[ing] on the abject speculation -- despite voluminous evidence to the contrary -- that if the adjustment application were granted, and Moreno was ever [convicted] in the future of [OUI], the government would be unable to deport him." We are not convinced. As the IJ emphasized in her decision, "[Moreno's] criminal history shows a pattern of dangerous behavior, and the [IJ] is not satisfied that he will change his ways if given another chance." The BIA emphasized that Moreno's "assurances and the

record evidence are not sufficient to overcome the [IJ]'s concerns or establish genuine rehabilitation on Moreno's part, especially given his past conduct."

The arguments and challenges Moreno advances as to the denial of his application for adjustment of status are neither constitutionally cognizable nor legally colorable. His arguments are nothing more than a dispute with the BIA's discretionary analysis repackaged as a legal question. See Jaquez, 758 F.3d at 435. Accordingly, we lack jurisdiction to review such a ruling, which constitutes a purely discretionary decision denying Petitioner's application for adjustment of status. We now turn to Petitioner's second issue.

### B. MOTION TO REMAND

Petitioner contests the BIA's refusal to remand the matter to the IJ for consideration of new evidence -- his "long-term partner['s]" cancer diagnosis (low-grade astrocytoma) and treatment. Moreno presented the new evidence to the BIA in his motion to remand.

Requests that the BIA remand to the IJ for consideration of new evidence "are treated as motions to reopen." Lee v. Barr, 975 F.3d 69, 75 (1st Cir. 2020). This court has jurisdiction to review denials of motions to reopen, even where the petitioner's ultimate goal before the agency was to garner some form of discretionary relief as to which this court's jurisdiction has

- 12 -

been substantially curtailed by statute. See Pandit v. Lynch, 824 F.3d 1, 4 n.3 (1st Cir. 2016) (citing Mazariegos v. Lynch, 790 F.3d 280, 285 (1st Cir. 2015) and Mata v. Lynch, 576 U.S. 143, 148 (2015) ("Under the INA, as under our century-old practice, the reason for the BIA's denial [of a motion to reopen] makes no difference to the jurisdictional issue.") (alteration in original)).

We review the BIA's denial of Moreno's motion to remand "under the 'highly deferential abuse-of-discretion standard.'" Adeyanju v. Garland, 27 F.4th 25, 51 (1st Cir. 2022) (quoting Tay-Chan v. Barr, 918 F.3d 209, 212 (1st Cir. 2019)). Within the abuse-of-discretion rubric, we examine the BIA's legal conclusions de novo. Id. "Where the BIA's explanation is too thin to allow us to evaluate the claims of error, we may find an abuse of discretion and remand to the BIA for further explanation." Id. However, we "will only overturn a denial of a motion to reopen[/remand] when 'the petitioner can establish that the BIA made an error of law or acted in a manner that is fairly characterizable as arbitrary and capricious.'" Lee, 975 F.3d at 76 (quoting Falae v. Gonzáles, 411 F.3d 11, 14 (1st Cir. 2005)).

To prevail, Petitioner must make three showings. First, he must demonstrate that the "evidence sought to be offered [on remand] is material and was not available and could not have been discovered or presented at the former hearing." Matter of Coelho,

20 I. & N. Dec. at 471 n.3; Rivera-Medrano v. Garland, 47 F.4th 29, 35 (1st Cir. 2022). Second, the petitioner must show that "the new evidence [offered] would likely change the result in the case." Matter of Coelho, 20 I. & N. Dec. at 473. Lastly, the petitioner "must make a showing of prima facie eligibility for the relief [sought]." Rivera-Medrano, 47 F.4th at 35 (quoting Falae, 411 F.3d at 14); see also Matter of Coelho, 20 I. & N. Dec. at 472 (noting that a motion to reopen may be denied based on failure to establish prima facie eligibility for the relief sought).

Petitioner claims that the BIA's decision is legally insufficient, and constitutes an abuse of discretion, because it does not provide a reasonable explanation or analysis in support of its conclusion. He further posits that the BIA's decision ignores Lafleur's dramatically changed circumstances as a result of her brain cancer, which is "likely to change the result" in the matter. He adds that at the time of the removal hearing, Lafleur "was capable of caring for her children, albeit by way of herculean effort, given her pre-existing disabling health conditions." Now, those circumstances have dramatically changed given she "can no longer work and is unable to properly care for her two children." In sum, Petitioner argues that the BIA committed an error of law in concluding that the new evidence would not change the outcome of the case.

In declining to remand, the BIA concluded that the addition of the new evidence would not likely change the result in the case. Simply put, the BIA determined that this new evidence was not likely to make a difference to the exercise of discretion that resulted in the outcome that the BIA reached. Matter of Coelho, 20 I. & N. Dec. at 473 ("[I]f we conclude that our decision on the appeal would be the same even if the proffered evidence were already part of the record on appeal, we will deny the remand."). While we recognize the severity of this outcome, because we cannot discern any error of law in the BIA's explanation of its conclusion, we have no authority to review the BIA's exercise of discretion. Thus, we have no basis to overturn the BIA's decision to deny the motion to remand.

**III. CONCLUSION**

For the reasons explained above, Moreno's petition is **DENIED**.